(Nos. 66036, 66123 cons.—

CONDELL HOSPITAL *et al.*, Appellees, v. THE ILLINOIS HEALTH FACILITIES PLANNING BOARD *et al.*, Appellants.

*Opinion filed September 29, 1988.*

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, of Chicago, and Lance T. Jones, Assistant Attorney General, of counsel), for appellants Illinois Health Facilities Planning Board and Illinois Department of Public Health.

Jeffrey R. Ladd, Lawrence M. Gavin and Daniel J. Lawler, of Bell, Boyd & Lloyd, of Chicago, and Gerald W. Shea and Ira A. Rogal, of Shea, Rogal & Associates, Ltd., of Westchester, for appellants Chicago Medical School Hospital, Inc., and University Health Sciences/ Chicago Medical School.

Steven L. Bashwiner, Laurence H. Lenz, Jr., and Daniel A. Kaufman, of Katten, Muchin & Zavis, of Chicago, for appellees.

JUSTICE CLARK delivered the opinion of the court:

This case arises out of a complaint filed by Condell Hospital, Lake Forest Hospital, Victory Memorial Hospital, Lutheran General Hospital, Inc., and St. Therese Medical Center (the Condell plaintiffs) seeking review in

the circuit court of Cook County of a decision of the Illinois Health Facilities Planning Board (the State Board) which granted defendants, Chicago Medical School, Inc., and University Health Sciences/Chicago Medical School (collectively CMS), a permit to construct a new hospital in Lake County, Illinois. The State Board's decision sought to be reviewed by the plaintiffs was allegedly "initially rendered on May 1, 1986 and became final on July 10, 1986." The complaint filed in the Condell case was consolidated in the circuit court with a related case filed by Highland Park Hospital and Good Shepherd Hospital, which also sought review of the State Board's decision. On April 14, 1987, the circuit court dismissed the second amended complaint in the Condell case and the complaint in the Highland Park case. The circuit court dismissed counts I through IV of the second amended complaint in the Condell case because they were prematurely filed and the court thus lacked jurisdiction under the Administrative Review Law (Ill. Rev. Stat. 1985, ch. 110, par. 3—101 et seq.). The circuit court also dismissed the Highland Park complaint because it, too, was untimely. On September 29, 1987, the appellate court reversed the circuit court's judgment insofar as it dismissed counts I through IV of the second amended complaint in the Condell case. The appellate court affirmed the judgment of the circuit court in regard to its dismissal of the Highland Park complaint. 161 Ill. App. 3d 907.

Thereafter CMS and the State Board each petitioned this court for leave to appeal that part of the judgment of the appellate court which reversed the circuit court's judgment insofar as it dismissed counts I through IV of the second amended complaint in the Condell case. Pursuant to Supreme Court Rule 315 (107 Ill. 2d R. 315), we granted the defendants' petitions for leave to appeal and consolidated these appeals.

The issues presented for our review are: (1) whether the State Board's May 1, 1986, decision granting CMS a permit to construct a new hospital was a final administrative decision subject to judicial review in the circuit court pursuant to the Administrative Review Law (Ill. Rev. Stat. 1985, ch. 110, par. 3—101 *et seq.*); (2) whether the Condell plaintiffs adequately exhausted their administrative remedies before seeking judicial review in the circuit court of the State Board's decision; and (3) whether the Highland Park plaintiffs can appeal the dismissal of their complaint under Supreme Court Rule 318 (107 Ill. 2d R. 318).

Under the Illinois Health Facilities Planning Act (the Health Planning Act), an individual is required to obtain a permit (certificate of need (CON)) from the Illinois Health Facilities Planning Board before constructing, modifying, or establishing a health care facility or before purchasing major medical equipment. (Ill. Rev. Stat. 1985, ch. 111½, par. 1152 *et seq.*) The State Board is required to issue a permit if the applicant is qualified, the project is economically feasible, the project is consistent with the public interest, and the project is consistent with the orderly and economic development of such facilities and is in accord with standards, criteria, or plans of need adopted and approved pursuant to the Health Planning Act. See Ill. Rev. Stat. 1985, ch. 111½, par. 1156.

In November 1984, Chicago Medical School submitted an application to the State Board for a permit to construct a new 224-bed, university teaching and tertiary-care hospital in North Chicago, Illinois, at a cost of approximately $45 million. North Chicago is located in Lake County. The application stated that the new hospital would significantly increase the availability of needed medical care for residents of Lake and McHenry Counties. The Chicago Medical School is one of three divisions of the University of Health Sciences; it was founded in

Chicago in 1912, became part of the University when the latter was established in 1967, and moved with the University to North Chicago in 1974 in conformity with a plan to regionalize medical schools and to enable the school to serve the area between Chicago and Milwaukee. During several months after filing its initial application, the school engaged in negotiations with other area hospitals to discuss possible affiliations, and CMS supplemented the application with additional information requested by the Board. During this time, the Board was presented in writing with numerous comments from health care professionals and planners, editorial writers, and elected public officials regarding the proposed CMS permit. The application was deemed completed, and the Board's review thereof was initiated on February 8, 1985.

On February 14, 1985, the Health Systems Agency for Kane, Lake and McHenry Counties, Inc. (HSA/KLM), issued to affected parties its "Notice of Public Hearing" regarding CMS's application. HSA/KLM was the health planning organization for the area encompassing the proposed CMS hospital, so recognized by the State Board pursuant to sections 8 and 9 of the Health Planning Act (Ill. Rev. Stat. 1985, ch. 111½, pars. 1158, 1159) and authorized by that act to review CON applications, to hold public hearings in connection therewith, and to certify to the Board its approval or disapproval thereof on the basis of "standards, criteria or plans of need adopted and approved by [HSA/KLM]." (Ill. Rev. Stat. 1985, ch. 111½, par. 1158.) In addition, the City of Chicago Health Systems Agency (Chicago HSA), which is Chicago's health planning organization, chose to perform its own review as a contiguous organization pursuant to section 8 of the Health Planning Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1158).

Following extensive public hearings, HSA/KLM's board of directors voted on June 13, 1985, to recommend denial of the CMS application. Meanwhile, after its own review, hearings and staff report, Chicago HSA's governing body also voted on May 22, 1985, to recommend disapproval of the CMS application. Thereafter, on review, both HSA/KLM's board of directors and Chicago HSA's governing body again voted to recommend disapproval of the CMS application.

On January 10, 1986, the State Board held a public hearing on the CMS application. At the close of the hearing, the Board rejected by a 2 to 9 vote a motion to approve the CMS application. This vote constituted an intent to deny the application. On January 16, 1986, the Board sent a letter to CMS pursuant to section 10 of the Act, advising CMS of the Board's intent to deny the application and of CMS's opportunity to appear before the Board and present "such information as may be relevant to the approval of a permit *** or in resistance of a denial of the application." (Ill. Rev. Stat. 1985, ch. 111½, par. 1160.) CMS responded to the Board's letter by sending additional material to the Board, with copies to HSA/KLM. On March 13, 1986, following its review of the additional material submitted by CMS, HSA/KLM's board of directors again voted to recommend disapproval of the CMS application.

Despite HSA/KLM's continuing recommendation to disapprove the application, on May 1, 1986, the State Board voted to approve CMS's application for a permit to construct the new hospital. The State Board found that the project was in "conformance with the applicable standards and criteria." In addition, the State Board specifically determined that the new hospital was necessary to improve medical services and assistance for underserved groups and to assist in the training and educa-

tion of Illinois health professionals, which were priorities the State Board considered of "paramount importance."

In announcing its vote approving the CMS application, the chair of the State Board stated: "The project has been approved[;] the Board has voted approval but the HSA must be afforded the opportunity for appeal. They have 30 days in which to do that."

Thereafter, on May 23, 1986, the Board sent a letter (the May order) to CMS, which read in part as follows:

"On May 1, 1986, the [Board] approved your application for permit based upon the project's conformance with the applicable standards and criteria ***.

\* \* \*

\*\*\* [Y]our permit \*\*\* is valid for 18 months, expiring on November 1, 1987.

\* \* \*

This permit is subject *to the rights of the areawide health planning organization (HSA) to appeal this decision,* 77 Ill. Adm. Code Section 1160.610. To proceed to obligate the permit during this period is to do so at your own risk. This permit period and time period for obligation of the project is not authorized by the Act to be stayed during this appeal process. Note, however, that requests may be made of the Board for permit extensions or renewals.

\* \* \*

The project must be obligated by contract, purchase order or lease prior to the expiration of the permit and must proceed toward completion with due diligence." (Emphasis added.)

On May 30, 1986, plaintiff hospitals filed with the Board a request for reconsideration pursuant to sections 1160.650, 1220.20(a)(1), and 1220.30 of the Board's rules, which provide for such hearings before the Board when any interested person (other than the recipient of a permit) makes a request therefor within 30 days after the Board's decision. (77 Ill. Adm. Code §§1160.650, 1220.20(a)(1), 1220.30 (1985).) In order to obtain such a

hearing, an interested person must show "good cause," a term that is defined by Board rule. See 77 Ill. Adm. Code §§1160.650, 1220.20(a)(1), (c), 1220.30 (1985).

Thereafter, on June 12, 1986, HSA/KLM requested an "administrative hearing" pursuant to section 8 of the Health Planning Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1158), and sections 1160.610 and 1220.20(a)(3) of the Board's rules. The Health Planning Act and the Board's rules entitle any area-wide health planning organization (HSA) to such a hearing before a Board-appointed hearing officer whenever the Board renders a decision on an application that is contrary to the area-wide HSA's findings, as was the case here. The area-wide HSA must submit an administrative hearing request within 30 days after the Board decision at issue but is not required to show "good cause" in order to obtain the hearing. (Ill. Rev. Stat. 1985, ch. 111½, par. 1158; 77 Ill. Adm. Code §§1160.610, 1220.20(a)(3) (1985).) Certain entities and persons are defined by Board rules as "adversely affected persons" who are given the right to intervene in the administrative hearing requested by an HSA. (See 77 Ill. Adm. Code §§1180.40, 1180.60 (1985).) The plaintiffs in the instant case are among the entities defined as "adversely affected persons." The rules do not provide a time limit for the filing of petitions to intervene. Once a petition is filed, the hearing officer may grant, limit or deny intervention based on various criteria set forth in Board Rule 1180.60(c). Neither the Health Planning Act nor the Board rules address the proper procedure when an HSA withdraws a request for an administrative hearing before substantive proceedings have been held or petitions to intervene have been filed or granted.

On July 10, 1986, the Board met and considered the plaintiffs' request for reconsideration hearings. At the meeting, the Board's executive secretary, Ray Passeri, stated:

> "[G]iven that the HSA has requested an administrative hearing, there is a process that must be followed with that decision which will be returning to the Board for a final administrative decision. Therefore, the matters, that the Board action is not yet final relative to the issuance of the permit [*sic*]."

He continued:

> "As part of the administrative hearing process there is an opportunity for effective [*i.e.*, affected] parties to intervene. Two of the parties that have submitted a request for reconsideration hearing have also given notice that they intend to petition for intervention at the administrative hearing."

A Board member, Marjorie Albrecht, then asked Passeri:

> "How does the—when you said reconsideration, how does that fit into the whole proportion of it? Does reconsideration come back to us before the administrative hearing or the request for it?"

Passeri answered:

> "Well, there are two separate sections in the statute. It gets a little convoluted. One portion of the statute where the Board has issued a permit, there is a request, there is a section where any person can request reconsideration of the Board's decision and that's quite independent from the section on administrative hearings which gives that right to an HSA, whose recommendation has been overturned or to an applicant which has been denied by the Board.
> *I think one of the concerns is not to have two processes going on at the same time*." (Emphasis added.)

At the meeting the Board considered at length the question of whether the HSA/KLM-requested hearing and the reconsideration hearings requested by Chicago HSA and the hospitals should be treated separately or whether they should be "merged" because they were contemporaneous. It is apparent that considerable confusion reigned at the meeting as to the policy and legal ba-

ses for disposing of the hearing requests. Following an extensive discussion, the motion to grant reconsideration hearings as requested by Chicago HSA and the hospitals failed (July decision). Mr. Passeri then added that for those whose reconsideration rights had been denied, another avenue was still open to request intervention in the administrative hearing.

On July 21, 1986, the Board wrote to counsel for the seven hospitals, to Chicago HSA, and to another filer of a request for reconsideration, advising each of them that the Board on July 10 had denied their respective requests for reconsideration hearings. Each letter stated:

> "In arriving at the decision the State Board noted that pursuant to 77 Illinois Administrative Code section 1220.20, the right to petition for intervention in an administrative hearing exists since the Health Systems Agency for Kane, Lake and McHenry Counties, Inc. has requested such a hearing.
>
> &#42;&#42;&#42;
>
> If you desire to petition the hearing officer for intervention, you should submit your request directly to [him]."

On July 22, 1986, the Board wrote HSA/KLM to advise it of the appointment of a hearing officer for its "appeal" of the Board's action on the CMS application. However, on August 14, 1986, the HSA/KLM board of directors formally rescinded its rehearing request as its "final administrative action" in connection with the proceedings before the Board. HSA/KLM notified the hearing officer and the participants in the proceedings of its decision by letter dated August 14, 1986, and by telephone on the morning of August 15, 1986. Board rules are silent as to the effect of a prehearing withdrawal of an HSA's request for hearing, whether before or after requests for intervention have been filed.

On August 28, 1986, Chicago HSA wrote the Board to advise that, pursuant to a decision of Chicago HSA's governing body, Chicago HSA had given notice of withdrawal of its petition for intervention in HSA/KLM's administrative proceeding. That petition had been filed on June 20, 1986. Chicago HSA's notice stated that at the prehearing conference held on August 15 after HSA/KLM had given notice of rescission of its request for hearing, the hearing officer directed the parties "to brief the issue as to whether any action in which potential intervenors could participate existed in light of" HSA/KLM's withdrawal. Chicago HSA's notice stated that the notice was being submitted in lieu of any briefs on that issue.

On September 14, 1986, CMS filed a position statement suggesting that, because HSA/KLM and Chicago HSA had withdrawn and no other person had sought to intervene to prosecute the "administrative appeal," the hearing officer should dismiss the proceeding and recommend "that the State Board's decision be *finalized.*" (Emphasis added.)

On October 27, 1986, the administrative hearing was conducted and all parties were in attendance. CMS's counsel argued that HSA/KLM's withdrawal of its hearing request was part of a "conspiracy to forum shop" and to facilitate filing and prosecution by appellants of their complaint in the circuit court by enabling them to assert that "you cannot intervene in nothing, and therefore, there is nothing before this hearing officer." Counsel for CMS argued that because Chicago HSA had filed its intervention petition, "they have intervened" and "there is a proceeding before this particular hearing officer, which should be conducted ***, and we should not allow this *** forum shopping."

Counsel for the plaintiff hospitals then objected to CMS counsel's "accusations," and represented that at

the time he learned that HSA/KLM would withdraw he had been preparing petitions for leave to intervene, which he now had in his briefcase, even though the complaint had been filed in the circuit court to meet the 35-day jurisdictional time limit that would have expired on or about August 14, 1986. The hospitals' counsel further argued that "there is nothing left for us to do" because HSA/KLM, "the only party having standing to request that hearing, has withdrawn that request before any proceedings have been had including considerations of any pending or possible request for intervention." The hospitals' counsel also stated that the administrative review complaint was filed prior to HSA/KLM's vote to withdraw its hearing request, that "we are now before you today with no proceeding," and that CMS's counsel "is simply wrong in his assertion first to forum shopping, but even if he were correct, there is nothing illegal or anything wrong about any kind of conduct that has taken place here." The hospitals' counsel concluded that, even though a withdrawal by one party after intervention had been granted might not cause dismissal of the proceedings, withdrawal by the moving party prior to grant of any intervention should result in dismissal, since "there is nothing [in which] to intervene."

However, counsel for Chicago HSA urged that "[t]here is still something pending at least so far as [Chicago HSA] is concerned" and that "this is all lumped together [as] part of the reconsideration process and that the Board members denied reconsideration based upon the fact that [Board counsel] told them that they should address the issues as intervenors, and they had a right to intervene in the pending appeal that had been filed."

The hearing officer advised the parties that he had concluded that he still had jurisdiction even though HSA/KLM wished to withdraw. He also advised the plaintiffs' counsel that the administrative hearing could be contin-

ued by an intervenor and that he would still allow the plaintiffs to intervene. The hearing officer told the plaintiffs' counsel:

"Very candidly, as requested previously, my concern, as a duly appointed hearing officer for the board, is apparently *your clients*, amongst others, *were referred to this particular forum*—I can't say in lieu of, but certainly in anticipation of a full hearing as requested by KLM. I am not inclined to feel that it would be fair, insofar as the board's position was concerned, to deny those parties that opportunity to intervene. *It was to me*, at least, as previously represented, *relatively clearly anticipated that this was to be afforded as a forum.*"

He further said:

"[KLM/HSA] wish[es] to withdraw at this point. I know of no good reason why I should not recommend to the board that they be allowed to do so. I know of no good reason at this point that I should not recommend to the board that this matter be dismissed in that no other party or interested party has afforded itself of the opportunity for this particular forum. Now, if you are—and at that point then, *it is going to be left up to you and your clients.*

*You*, as far as I can see, *are* afforded the opportunity and *may still seek to present that petition* in which case, if you're going to be standing in the position of KLM, I really don't have much issue with that because at least then we have something to hear out, although, very frankly, my concern is we are at this point nearly 3 months down the line still dealing with very preliminary issues. I will request to all present that if that is the avenue that we are going to follow, you gentlemen are going to have to do a lot of hard work very rapidly and this matter is going to proceed in an expedited manner." (Emphasis added.)

The hearing officer further advised the parties that if no one sought to intervene, he would recommend that the administrative hearing be dismissed because there

would be no party left in the proceeding who challenged the State Board's decision. The plaintiffs, however, again declined to participate except to urge that the hearing be dismissed.

On October 28, 1986, the hearing officer issued his report and recommendation to the State Board. He concluded, among other things, that "[j]urisdiction vested with the hearing officer once the hearing request had been received and the hearing officer appointed." He further found that once jurisdiction vested, HSA/KLM could not unilaterally dismiss the administrative hearing simply by giving notice of its intent to withdraw from the proceeding, but instead the forum remained as an available forum to other interested persons who might seek to intervene. He held:

> "The fact that here those interested parties chose not to seek to intervene generally, or to seek to substitute themselves for KLM should not obscure the fact that this forum had to be made available to them once the hearing had been requested."

The hearing officer recommended, however, that the administrative hearing be dismissed because HSA/KLM had decided to withdraw from the proceeding, Chicago HSA withdrew its petition to intervene, and no other interested persons (including plaintiffs) sought to intervene to contest the State Board's actions or decisions.

He said:

> "There being no party to present any view of evidence contrary to that adopted by the Board, that action and decision of the State Board is uncontested, and this administrative hearing ought to be dismissed."

On November 6, 1986, the State Board adopted the hearing officer's report and recommendation. The State Board advised all interested persons (including plaintiffs) of its decision by letter dated November 14, 1986, which said:

"On November 6, 1986, the Health Facilities Planning Board adopted the hearing officer's report and recommendation dismissing the administrative hearing for the referenced project. The permit granted by the State Board on May 1, 1986 for the project remains valid and in effect. The action taken by the State Board constitutes its *final determination* on the application." (Emphasis added.)

The complaint in the Condell case was filed on August 13, 1986. It contained four counts, all of which sought judicial review of the State Board's decision which allegedly "was initially rendered on May 1, 1986 and became final on July 10, 1986 when the State Board denied petitioner's Request for Reconsideration." Jurisdiction was based upon the Administrative Review Law (Ill. Rev. Stat. 1985, ch. 110, par. 3—101 *et seq.*).

On February 13, 1987, the circuit court granted the plaintiffs leave to file a second amended complaint in the Condell case containing five counts. Counts I through IV were the same as counts I through IV of the original complaint. In their appeal before the appellate court, the plaintiffs did not seek to reverse the dismissal of count V, and count V is not at issue in the appeal presently before this court. We are concerned here only with the circuit court's dismissal of counts I through IV.

The Highland Park plaintiffs filed their complaint for administrative review in the circuit court on December 19, 1986, which was several months after the Board's July denial of their request for a reconsideration hearing, 43 days after the Board's November vote to dismiss the proceedings that followed HSA/KLM's request for a hearing, and exactly 35 days after copies of the November order were mailed by the Board. The body of the Highland Park complaint was identical to the Condell complaint, including the following allegation:

"This Complaint seeks administrative review of the decision of the Illinois Health Facilities Planning Board ('the Board') to grant a certificate of need ('CON') to Chicago Medical School Hospital, Inc. and University Health Sciences/Chicago Medical School to construct and operate a new 224 bed hospital in Lake County, Illinois. That decision was initially rendered on May 1, 1986 and became final on July 10, 1986 when the Board denied petitioners' Request for Reconsideration. Petitioners were served notice of the Board's action on July 21, 1986."

On January 8, 1987, pursuant to stipulated motion of all parties, the circuit court entered its agreed order consolidating the Condell and Highland Park cases. The Board submitted the administrative record as its answer to the complaints on March 3, 1987. CMS filed a motion to dismiss and/or for judgment on the pleadings, claiming, *inter alia*: (1) that both complaints were untimely; (2) that plaintiffs lacked standing to challenge the Board's decision because they were not "parties" to the proceedings; and (3) the plaintiffs had failed to exhaust their administrative remedies.

On February 23, 1987, CMS moved to dismiss the second amended complaint in the Condell case and for judgment on the pleadings on the grounds, among others, that counts I through IV were prematurely filed, that counts I through IV failed to seek judicial review of the State Board's final administrative decision, and that the plaintiffs failed to exhaust their administrative remedies.

On April 14, 1987, the circuit court granted CMS's motion to dismiss. The circuit court held that counts I through IV were prematurely filed and that it lacked jurisdiction over those counts. The circuit court reasoned that the administrative hearing initiated by HSA/KLM "had the effect of continuing the cause within the administrative agency" and that the administrative pro-

ceeding was not "terminated" as required under section 3—101 of the Administrative Review Law (Ill. Rev. Stat. 1985, ch. 110, par. 3—101) until the State Board entered its final decision on November 6, 1986, dismissing the administrative hearing. The trial court found that only the November order dismissing KLM's hearing was an appealable decision. Accordingly, the trial court concluded that counts I through IV of the Condell complaint, which were filed on August 13, 1986, were thus prematurely filed, and that count V was likewise untimely because it was not filed within 35 days of the November order.

The court also dismissed the Highland Park complaint, "because Plaintiffs therein have yet to establish that they were served notice on November 14, 1986 and they do not seek review of that final order." Rather, the court said, "[a]ll four counts of the Highland Park case contest the decision rendered on May 1st, 1986. *** You never refer to the November order."

On September 29, 1987, the appellate court reversed the circuit court's judgment insofar as it dismissed counts I through IV of the second amended complaint in the Condell case. (161 Ill. App. 3d 907.) The appellate court held that the State Board's May 1 decision became final and subject to judicial review insofar as the plaintiffs were concerned on July 10, 1986, when the State Board denied their motion for reconsideration. The appellate court thus held that counts I through IV were not prematurely filed. The court also held that the plaintiffs sufficiently exhausted their administrative remedies, even though they failed to intervene in the administrative hearing initiated by HSA/KLM. Regarding the Highland Park complaint, the appellate court affirmed the circuit court's dismissal of that complaint. The appellate court denied Highland Park's application under Supreme Court Rule 362 (107 Ill. 2d R. 362) seeking leave to

amend their complaint, because the proposed amendment still did not state that the complaint sought review of the November order.

To make this complicated factual statement easier to understand, we set forth the following schematic chronology of the facts relevant to this case:

| | |
|---|---|
| November 1984: | Chicago Medical School (CMS) submits an application for a permit to construct a new hospital in Lake County. |
| May 1, 1986: | State Board votes to approve permit to construct new hospital. |
| May 23, 1986: | State Board mails CMS notice of its May 1 decision, stating that its decision is subject to HSA/KLM's right to appeal. |
| May 23, 1986: | State Board also mails HSA/KLM notice of May 1 decision and advises of right to request an administrative hearing within 30 days and stating it will make its "final determination" after such hearing. |
| May 30, 1986: | Plaintiffs file request for reconsideration. |
| June 12, 1986: | HSA/KLM requests administrative hearing. |
| June 20, 1986: | Chicago HSA files petition to intervene in the administrative hearing requested by HSA/KLM. |
| July 10, 1988: | State Board appoints a hearing officer to conduct the administrative hearing and |

|  | schedules the first hearing for July 28; also *plaintiffs' request for reconsideration fails, and the State Board advises plaintiffs of their right to intervene in the administrative hearing.* |
| July 21, 1986: | State Board mails plaintiffs notice that their request for reconsideration was denied, noting that plaintiffs may intervene in the administrative hearing. The notice also advises that the first hearing is scheduled for July 28, 1986. |
| July 23, 1986: | Hearing officer continues the July 28 hearing to August 15 at the request of all parties, including plaintiffs. |
| August 13, 1986: | Plaintiffs file complaint in the Condell case. |
| August 15, 1986: | Prehearing conference held; Chicago HSA formally files a petition to intervene with the hearing officer; hearing officer states that HSA/KLM orally advised him of its intent to withdraw from hearing. The hearing officer enters an order allowing interested parties to intervene and submit briefs. |
| August 18, 1986: | Summons issued in the Condell case. |
| August 29, 1986: | Chicago HSA files notice of withdrawal of its petition to intervene. |

October 27, 1986:    Second prehearing conference held. Hearing officer offers plaintiffs another opportunity to intervene.

October 28, 1986:    Hearing officer recommends that the State Board dismiss the administrative hearing.

November 6, 1986:    State Board votes to adopt hearing officer's report and to dismiss administrative hearing.

November 14, 1986:    State Board mails notice of the November 6 decision, stating that the action taken by it constitutes its "final determination" on CMS's permit application.

December 19, 1986:    Condell plaintiffs file their second amended complaint adding count V. Highland Park plaintiffs file their complaint. Court strikes second amended complaint in Condell case, but grants leave to file as of February 13, 1987.

April 14, 1987:    Circuit court dismisses second amended complaint in the Condell case.

September 29, 1987:    Appellate court reverses the circuit court insofar as the circuit court dismissed counts I through IV of the second amended complaint in the Condell case.

Before discussing the substantive issues presented in this appeal, we must first resolve a procedural matter:

whether the Highland Park plaintiffs can appeal the dismissal of their complaint under Supreme Court Rule 318(a) (107 Ill. 2d R. 318(a)).

The State Board and CMS filed petitions for leave to appeal only that portion of the appellate court's decision which reversed the dismissal of counts I through IV of the second amended complaint in the Condell case. The plaintiffs in the Highland Park case did not seek to appeal the decision of the appellate court affirming the dismissal of their complaint. Even though no appeal was taken from the appellate court's decision which affirmed the dismissal of the complaint in the Highland Park case, the plaintiffs in the Highland Park case now maintain that they are entitled to appeal that portion of the appellate court's decision under Supreme Court Rule 318(a). The State Board and CMS assert here that the plaintiffs in the Highland Park case are not qualified to invoke Rule 318(a) because they are not an "appellee, respondent, or coparty" for the purpose of appeal, and accordingly those portions of the plaintiffs' brief dealing with the Highland Park case should be stricken. We agree.

Supreme Court Rule 318(a) provides:

> "In all appeals, by whatever method, from the Appellate Court to the Supreme Court, any appellee, respondent, or coparty may seek and obtain any relief warranted by the record on appeal without having filed a separate petition for leave to appeal or notice of cross-appeal or separate appeal." 107 Ill. 2d R. 318(a).

In *Penkava v. Kasbohm* (1987), 117 Ill. 2d 149, this court held that the plaintiff-appellee could not challenge the appellate court's dismissal of two counts of her complaint against two defendants because this court had only granted leave to appeal that part of the appellate court's judgment which had reinstated a third count against a third defendant. This court held that the plaintiff was not an "appellee, respondent, or coparty" as to

the other two defendants and, therefore, "was not qualified to act under the provisions of Rule 318(a)." 117 Ill. 2d at 154.

The plaintiffs in the Highland Park case are even less qualified to act under the provisions of Rule 318(a) than the plaintiff-appellee in *Penkava*. In *Penkava*, an appellee was attempting to raise new issues in the appeal; here, persons who are not even appellees are attempting to interject new issues in the appeal. They are not plaintiffs in the Condell case; this appeal concerns a complaint which they did not file. No appeal was taken in this case against the plaintiffs in the Highland Park case, nor did those plaintiffs file a petition for leave to appeal seeking a reversal of that portion of the appellate court's judgment dealing with the Highland Park complaint. The appeals before us are only against the plaintiffs in the Condell case and have nothing to do with the Highland Park case. Thus, the plaintiffs in the Highland Park case are clearly not qualified to invoke Rule 318(a) because they are not an "appellee, respondent, or coparty" for the purposes of this appeal.

We now turn to the merits of the appellants' contentions in the Condell case. The appellants make two arguments which, while conceptually separable, are in practice intertwined: (1) that because the State Board did not render its final decision until November 6, 1986, the Condell plaintiffs' complaint was premature and untimely, and (2) that because the Condell plaintiffs chose not to intervene in the HSA/KLM hearing their complaint was properly dismissed for failure to exhaust their administrative remedies. We find neither of these contentions persuasive.

The contention that the May 1 and July 10 administrative decisions were not "final" is belied by the express language of the Administrative Review Law. Section 3—101 of the Administrative Review Law states:

" 'Administrative decision' or 'decision' means any decision, order, or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency. *In all cases in which a statute or a rule of the administrative agency requires or permits an application for a rehearing or other method of administrative review to be filed within a specified time \*\*\*, and an application for such rehearing or review is made, no administrative decision of such agency shall be final as to the party applying therefor until such rehearing or review is had or denied.* However, if the particular statute permits an application for rehearing or other method of administrative review to be filed with the administrative agency for an indefinite period of time after the administrative decision has been rendered (such as permitting such application to be filed at any time before judgment by the administrative agency against the applicant or within a specified time after the entry of such judgment), then the authorization for the filing of such application for rehearing or review shall not postpone the time when the administrative decision as to which application shall be filed would otherwise become final, but the filing of the application for rehearing or review with the administrative agency in this type of case shall constitute the commencement of a new proceeding before such agency, and the decision rendered in order to dispose of such rehearing or other review proceeding shall constitute a new and independent administrative decision. If such new and independent decision consists merely of the denial of the application for rehearing or other method of administrative review, the record upon judicial review of such decision shall be limited to the application for rehearing or other review and the order or decision denying such application and shall not include the record of proceedings had before the rendering of the administrative decision as to which the application for rehearing or other administrative review shall have been filed unless the suit for judicial review is commenced within the time it would be authorized by this

Act to have been commenced if no application for rehearing or other method of administrative review had been filed." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 110, par. 3—101.

There is no real dispute between the parties as to the significance of the May 1 order. Had all parties chosen not to seek reconsideration, it clearly would have been a "final" order. It affected the "legal rights, duties, or privileges" of appellant CMS by permitting it to begin construction of a hospital on May 23, 1986. It also *obliged* CMS to begin to perform within a specified period of time, and the running of this period could not be stayed by any further administrative proceedings. Indeed, to secure a stay of the running of the permit period CMS was forced to seek an order from the circuit court. In the absence of a request for reconsideration, the May 1 order would have "terminated the proceedings" before the Board. Thus the crux of the dispute between the parties hangs upon how the finality of the May 1 order was affected by the pendency of the two different requests for "rehearing or other method of administrative review" which were filed by the Condell plaintiffs and by HSA/KLM.

It is clear that in the absence of action by any other party, the Condell plaintiffs' request for reconsideration would only have delayed the finality of the May 1 order until the denial of the Condell plaintiffs' request—in other words, until July 10, 1986. The reconsideration hearings sought by the Condell plaintiffs' were treated by the Board as having been brought under sections 1160.650, 1220.20(a)(1), and 1220.30 of the Board's rules (77 Ill. Adm. Code §§1160.650, 1220.20(a)(1), 1220.30 (1985)). These sections provide that an interested person other than the recipient of a permit may request a rehearing by the Board within 30 days after a Board decision. It follows that this request was an application for a

rehearing that could only be brought "within a specified period of time," denial of which would render the May 1 order "final as to the party applying therefor"—the Condell plaintiffs. Thus, on July 10, 1986, the denial of the Condell plaintiffs' request for reconsideration would have rendered the May 1 order final as to the Condell plaintiffs.

Should the finality of this order as it applies to the Condell plaintiffs be affected by the separate request for a hearing sought by HSA/KLM? The wording of the statute suggests not. It is true that HSA/KLM's request affected the finality of the May 1 order as it applied to HSA/KLM. The hearing sought by HSA/KLM is provided for under section 8 of the Health Planning Act (Ill. Rev. Stat. 1983, ch. 111½, par. 1158) and sections 1160.610 and 1220.20(a)(3) of the Board's rules (77 Ill. Adm. Code §§1160.610, 1220.20(a)(3) (1985)). The Health Planning Act and the Board's rules entitle any area-wide health planning organization, such as HSA/KLM, to a hearing before a hearing officer whenever the Board renders a decision which is contrary to the area-wide HSA's findings. Under these sections the area-wide HSA must submit any hearing request within 30 days after the Board decision. Since this request could only be brought "within a specified time," the May 1 order would not become "final as to the party applying therefor"—HSA/KLM—until the reconsideration had been "had or denied." The language "as to the party applying therefor" must mean, if it means anything at all, that final orders remain final for those parties who do not apply for reconsideration, or whose applications are no longer pending. Under the doctrine of *expressio unius est exclusio alterius* (the mention of one thing implies the exclusion of the other), the use of the words "as to the party applying therefor" cannot be presumed to be surplusage. (See *Glen Ellyn Savings & Loan Associa-*

*tion v. Tsoumas* (1978), 71 Ill. 2d 493; *White v. Barrett* (1970), 45 Ill. 2d 206.) Therefore HSA/KLM's request rendered the May 1 order nonfinal only to the extent that an action by HSA/KLM in the circuit court would have been premature. It did not affect the finality of the May 1 order and the July 10 denial of the Condell plaintiffs' request for rehearing so as to render the Condell plaintiffs' action premature. That action was timely filed.

Because HSA/KLM's petition only affected "the party applying therefor"—HSA/KLM—we are not bound by the many cases cited by the appellants for the proposition that only "final" administrative decisions can be subject to judicial review. (See, *e.g., International Paper Co. v. Industrial Comm'n* (1984), 99 Ill. 2d 458; *International Harvester v. Industrial Comm'n* (1978), 71 Ill. 2d 180; *People v. Scudder Buick, Inc.* (1971), 47 Ill. 2d 388.) In all of these cases, the party seeking judicial review was the same party which had already chosen to seek rehearing.

Our conclusion is not affected by the fact that the Condell plaintiffs might have intervened in HSA/KLM's proceeding. The parties disagree as to whether the Condell plaintiffs actually could have intervened in the HSA/KLM proceeding; it is not clear whether they could have intervened as of right or whether instead they would have needed the hearing officer's permission. We need not decide these issues here. Even assuming that intervention constitutes "another method of administrative review" available to the Condell plaintiffs, it is not a method which the Condell plaintiffs were required to use within a "specified period of time." Thus, under section 3—101 of the Administrative Review Law, resort to this method would not "postpone the time when the administrative decision *** would otherwise become final," the petition to intervene would "constitute the commencement of a new proceeding before such agency," and "the

decision rendered in order to dispose of such rehearing or other review proceeding" would "constitute a new and independent administrative decision." (Ill. Rev. Stat. 1985, ch. 110, par. 3—101.) Thus, even had the Condell plaintiffs intervened in the HSA/KLM proceeding, their intervention would not have affected their separate right to challenge the May 1 order and July 10 denial, which, insofar as they affected the Condell plaintiffs, remained final.

The decision of the Condell plaintiffs not to intervene in the HSA/KLM proceeding also did not constitute a failure to exhaust their administrative remedies. The "multiple-remedy" exception to the exhaustion doctrine provides that a party need not pursue administrative remedies which are parallel or duplicative. (See *Fredman Brothers Furniture Co. v. Department of Revenue* (1985), 109 Ill. 2d 202; *Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350; *Village of Cary v. Pollution Control Board* (1980), 82 Ill. App. 3d 793, *appeal denied* (1980), 81 Ill. 2d 590.) Here, even assuming intervention was available, it would merely have duplicated the Condell plaintiffs' prior participation in the proceedings leading up to the May 1 order and their rejected request for rehearing.

We are aware of the danger that our holding here will lead to multiple and inconsistent administrative decisions. This danger is outweighed, however, by the need to provide each party in an administrative proceeding with a clear route from the administrative agency to the circuit court. If an administrative decision is not final until *all* parties have exhausted their administrative remedies, no one party can ever be certain when to seek judicial review. In this case, for example, the Condell plaintiffs had no way of knowing when and whether HSA/KLM would pursue a remedy which belonged exclusively to HSA/KLM. In the meantime, the clock was

ticking on the Condell plaintiffs' right to seek judicial review of the Board's decision. As the appellate court reasoned below:

> "Meanwhile, the 35-day period for filing a complaint for administrative review of the arguably final Board decision will be running, while a potential intervenor or complainant ponders at its own peril whether to refrain from filing a possibly premature complaint for administrative review and to wait for an opportunity to seek intervention at a potential new administrative stage, or whether to file a complaint in the circuit court within 35 days of the arguably final decision and thus to risk learning too late that an HSA-requested hearing constituted a continuation of administrative proceedings in which instead leave to intervene should have been sought." 161 Ill. App. 3d at 931.

The unfairness of forcing one party to mimic a second party's litigation strategy is reinforced by the actual course of events below. HSA/KLM ultimately withdrew its request for a hearing. Had the Condell plaintiffs intervened it is by no means certain that they could have continued the hearing on their own. How they would have achieved judicial review at that point, when the time for seeking review of the May 1 order and July 10 denial would long since have expired, is a question that appellants do not, and cannot, answer.

It would be preferable if all administrative proceedings in a single case ended as to all parties at the same time, but we cannot treat diverse parties as if they were joined at the waist like Siamese twins. In real life, administrative proceedings can become unfortunately complicated: in threading their way through the maze created by the Administrative Review Law and the Board's rules, some parties may choose to zig where others choose to zag. The circuit court, where appropriate, is always free to consolidate divergent cases (see Ill. Rev. Stat. 1985, ch. 110, par. 2—1006) and to stay conflicting

administrative proceedings (see Ill. Rev. Stat. 1985, ch. 110, par. 3—111(1)). These remedies, where available, are preferable to putting one party at another's mercy.

For the foregoing reasons, the judgment of the appellate court, reversing the trial court's dismissal of counts I through IV of the second amended complaint in the Condell case, is affirmed, and the cause is remanded to the circuit court of Cook County.

*Affirmed; cause remanded.*

JUSTICE STAMOS took no part in the consideration or decision of this case.