NO. 4-97-0470

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,      )   Appeal from

Plaintiff-Appellee,             )   Circuit Court of

v.                              )   Livingston County

WILLIAM KEENE,                            )   No. 96CF154

Defendant-Appellant.            )

                                          )   Honorable

                                          )   Charles E. Glennon,

                                          )   Judge Presiding.

_________________________________________________________________

JUSTICE KNECHT delivered the opinion of the court:

Defendant, Wil­liam Keene, appeals his sentence of 10 years' imprisonment for aggravated battery (a Class 3 felony), a violation of sec­tion 12-4(b)(6) of the Crim­i­nal Code of 1961 (Criminal Code) (720 ILCS 5/12-4(b)(6),(e) (West 1996)), and 30 years' imprisonment for unlawful possession of a weapon by a person in the custody of a Department of Corrections (DOC) facil­ity (a Class 1 felony), a violation of sec­tion 24-1.1(b) of the Crim­i­nal Code (720 ILCS 5/24-1.1(b),(e) (West 1996)), with the terms to run consecutively.  We affirm in part and reverse in part and remand with directions.

After a jury trial in Livingston County circuit court, defendant was convicted of unlawful possession of a weapon by a person in the custody of a DOC facility and aggravated battery based on a battery to correctional officer Donald Schultheis.  On April 29, 1996, defendant was an inmate in the condemned unit at Pontiac Correctional Center.  During the regularly scheduled "count" of the inmates at the beginning of the midnight shift, Officer Schultheis and another correctional officer went to each cell of the con­demned unit to see if each inmate was present.  At that time inmates were allowed to hang blankets at the front of the bars of their cells and when the officers got to defendant's cell a blanket was hanging as a curtain over the front of the cell.  

Officer Schultheis called defendant's name twice.  He received no answer and pulled the blanket back.  As he did so, de­fendant, who was standing directly behind the blan­ket, jabbed Schultheis with a piece of wood with a metal wire sticking out the end.  The blow struck Schultheis with such force he spun around.  Defendant moved to stab again, but Schultheis and the other officer quick­ly withdrew.  

Schultheis received a puncture wound at his lip and pain shot up his face.  As a result of the injury, his facial muscles in that area still twitched and drooped and he continued to feel pain at the time of the trial March 18 and 19, 1997.  

The presentence report detailed defendant's numerous prior con­vic­tions.  All but the last conviction were from the State of Wis­consin.  In 1972 he was convicted of two counts of theft; in 1973 of bur­glary; in 1974, three counts of bur­glary and one of theft; in 1975, three counts of burglary and one of es­cape; in 1976 of escape; in 1978 of disorderly con­duct; in 1980 of bur­glary; in 1982 of robbery, burglary and party to robbery; in 1983, two counts of robbery, burglary and injury conduct re­gard­less of life; in 1984 of escape; in 1992 of attempt (rob­bery), burglary, party to robbery, robbery, injury conduct re­gardless of life, and escape.  Finally, he was convicted of three counts of murder and of armed robbery and was sentenced to death on October 15, 1993, in Stephenson County, Illinois. 

  Defendant's DOC disciplinary record showed 25 viola­tions, 18 of which were major offenses.  A number of the vio­la­tions were assaults, while others included abuse of priv­ileges, aiding and abetting, health and safety, disobeying direct orders, dangerous contraband, and possession of unautho­rized prop­erty.  

After reviewing the presentence report the trial court stated:

"So the defendant is on the condemned unit because of the murder convictions even set­ting aside all the other convictions.  Well, he has convictions in Wisconsin, which under Illi­nois law would make him eligible hav­ing--a number of them having occurred since 1978, he has three or more separate indi­vidu­ally charged Class 2 or higher felony con­vic­tions, which for the unlawful possession of weapon Class 1 felony makes him sub­ject to mandatory Class X sentencing.  He is also eligible for extend­ed[-]term sentencing on the aggra­vated bat­tery.  I would indicate for the record that these are two sepa­rate offenses.  Not in the same course of con­duct.  That posses­sion of the weapon was a completed offense by him in the con­demned unit before he then made the deci­sion to use that weap­on and commit an aggra­vated battery upon a correc­tional offi­cer.  So these are--not these are subject to two sepa­rate sen­tences.  He is subject to consecu­tive sen­tenc­ing in this case because they are not in the same course of con­duct.

* * *

I am going to sentence him on Count I, aggravated bat­tery, bodily harm[,] to an extended sentence of ten years in the Illi­nois Depart­ment of Corrections for aggravated battery, Class 3 felony.

I am going to sentence him to a consecu­tive sen­tence of thirty years, which is a maximum nonextended term in the Illinois Department of Corrections[,] for the offense of unlawful posses­sion of weapon by person in custody of Department of Correc­tions facili­ty, which is, as I say, manda­tory Class X."

Defendant now appeals his sentence.

The State first argues defendant has waived all conten­tions of error regarding his sentences by failing to file a postsen­tenc­ing motion challenging the appropriateness of his sen­tence.  Section 5-8-1(c) of the Unified Code of Corrections (Code) pro­vides:

"A defendant's challenge to the correctness of a sen­tence or to any aspect of the sen­tencing hearing shall be made by a written motion filed within 30 days fol­lowing the impo­sition of sen­tence."  730 ILCS 5/5-8-1(c) (West 1996).

The supreme court recently held the provisions of sec­tion 5-8-1(c) must be complied with or the issues are waived on appeal.  
People v. Reed
, 177 Ill. 2d 389, 393, 686 N.E.2d 584, 586 (1997).  However, the court in 
Reed
 noted the defendants in that case did not argue their sentencing challenges amounted to plain error.  
Reed
, 177 Ill. 2d at 395, 686 N.E.2d at 587.  There­fore, the court left open an exception from the waiver doc­trine under the rule of plain error found in Supreme Court Rule 615(a).  134 Ill. 2d R. 615(a).  This rule states in pertinent part:  "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court."  134 Ill. 2d R. 615(a).  

Our supreme court has explained the plain error rule applies when the evidence is closely balanced or the alleged error is of such magnitude the defendant is denied a fair and impartial trial.  
People v. Walker
, 109 Ill. 2d 484, 504, 488 N.E.2d 529, 538 (1985).  Sentencing issues may be reviewed as plain error where the issue is one of misapplication of the law,  because the right to be sentenced law­fully is sub­stan­tial because it affects a defendant's fundamental right to liber­ty.  See 
Peo­ple v. Martin
, 119 Ill. 2d 453, 458, 519 N.E.2d 884, 886 (1988); 
People v. Ritchey
, 286 Ill. App. 3d 848, 852, 677 N.E.2d 973, 975-76 (1997); 
People v. Askew
, 273 Ill. App. 3d 798, 806, 652 N.E.2d 1041, 1047 (1995).  

In applying this standard to this case, we find no error occurred in the trial court's imposition of an ex­tended term for defendant's conviction of aggravated battery.  Section 5-8-2(a) of the Code states;

"A judge shall not sentence an offender to a term of impris­onment in excess of the maximum sentence au­tho­rized by Section 5-8-1 for the class of the most serious offense of which the of­fender was convicted unless the factors in aggra­va­tion set forth in para­graph (b) of Section 5-5-3.2 were found to be pres­ent."  730 ILCS 5/5-8-2(a) (West 1996).

Our supreme court has interpreted this section to mean when a de­fendant has been convicted of multiple offenses, generally an ex­tend­ed-term sentence may be imposed only for the conviction with­in the most serious class (
People v. Jordan
, 103 Ill. 2d 192, 205-06, 469 N.E.2d 569, 575 (1984)), but extended-term sentences may be im­posed on dif­fer­ing class of­fens­es that arise from unre­lated cours­es of con­duct.  
People v. Coleman
, 166 Ill. 2d 247, 257, 652 N.E.2d 322, 327 (1995).  

Defendant argues his possession of a weapon was related to the use of the weapon to stab Schultheis.  In support of his argument he claims language used by this court in 
People v. Strickland
, 283 Ill. App. 3d 319, 668 N.E.2d 1201 (1996), created a rule the possession of a weapon by an inmate and the use of that weapon in a battery are deemed to be related offenses.  In 
Strickland
, the defendant was charged with aggravated battery and unlawful possession of a weapon by a person in the custody of DOC.  In 
Strickland
, however, the de­fen­dant stabbed an­other in­mate with a homemade knife and then, in a struggle to subdue him, injured a correctional offi­cer.  He was charged with bat­tery on the correc­tional officer only.  
Strickland
, 283 Ill. App. 3d at 321, 668 N.E.2d at 1201-02.  

This court held the two offenses were the product of two distinct courses of conduct and, hence, unre­lated for pur­poses of sen­tenc­ing the de­fen­dant to an ex­tend­ed sen­tence on the battery con­vic­tion.  
Strickland
, 283 Ill. App. 3d at 325, 668 N.E.2d at 1204.  In so holding we stated:

"Defendant acquired possession of the home­made knife sometime prior to the incident.

After defendant stabbed the other inmate with the knife, his goal of doing so, as well as the purpose behind his acquisition of the knife had been fulfilled
.  Defen­dant then decided he would refuse to recognize the authority of correctional officers at the scene.  His violent resistance to the correc­tional offi­cers was the obvious yet fu­tile manifesta­tion of this choice.  Al­though these two courses of conduct were in close prox­imity, they were distinct, and defendant's convic­tion of the weapon posses­sion charge does not preclude the impo­sition of an ex­tend­ed-term sen­tence for aggra­vated battery of Officer Harvey."  (Emphasis add­ed.)  
Strickland
, 283 Ill. App. 3d at 325, 668 N.E.2d at 1204.

The language cited in 
Strickland
 did not cre­ate a rule whereby an inmate's possession of a weap­on and the first battery offense committed as a result of such pos­ses­sion are re­lated offenses.  Rather, we find, as did the trial court, the of­fense of posses­sion of a weapon by an inmate of DOC is a 
sepa­rate
 of­fense in this case from any battery com­mitted by the in­mate using such a weap­on.  The elements giving rise to the of­fense of pos­session of a weapon by an inmate do not require use of the weapon or proof of the inmate's intent.  Sec­tion 24-1.1 of the Crim­inal Code only re­quires that the inmate 
possess
 the weap­on.  The in­tent with which he pos­sess­es it is to be dis­re­garded.  720 ILCS 5/24-1.1(b) (West 1996).  There­fore, defen­dant was guilty of this offense the mo­ment he came into posses­sion of the weapon.  His use of the weap­on later in the aggravat­ed bat­tery perpetrated on Schultheis was a sepa­rate unre­lated offense.

Accordingly, the trial court properly determined the two acts to be separate and distinct and properly sentenced de­fen­dant to an extended-term sentence for aggravated battery.

As to defendant's second argument, that enhancement of his Class 1 felony conviction for possession of a weapon in a DOC facility to a Class X for sentencing purposes was erroneous, we find plain error to have been com­mit­ted by the trial court and, thus, an exception to the waiver rule under Rule 615(a).    

Section 5-5-3(c)(8) of the Code provides:

"
When a defendant
, over the age of 21 years, is convicted of a Class 1 or Class 2 felo­ny, 
after having twice been convicted
 of any Class 2 or greater Class felo­nies 
in Illi­nois
, and such charges are sepa­rately brought and tried and arise out of different se­ries of acts, such defendant shall be sen­tenced as a Class X offender.  This para­graph shall not apply unless (1) the first felony was commit­ted after the effec­tive date of this amen­datory Act of 1977; and (2) the second felony was committed after con­viction on the first; and (3) the third felony was com­mitted after convic­tion on the second." (Em­phasis added.)  730 ILCS 5/5-5-3(c)(8) (West 1996).

According to defendant's presen­tence report, he had  numerous convictions in Wiscon­sin but only one prior conviction in Illinois.  De­spite lan­guage in section 5-5-3(c)(8) providing for enhancement of a Class 1 or 2 felony for sentencing purposes upon prior con­vic­tions "in Illi­nois" of two or more Class 2 or greater felonies, the trial court found con­vic­tions in Wiscon­sin that were the equiva­lent of Class 2 or higher felo­nies in Illi­nois met the require­ments of this sec­tion.

There is no case law interpreting the lan­guage of sec­tion 5-5-3(c)(8) and whether it includes convic­tions out­side Illi­nois.  Thus, we will interpret the statue applying the well-es­tab­lished principles of statutory construction. 

The primary rule of statutory construction, to which all other rules are subordinate, is to ascertain and give effect to the true intent of the legislature.  In determin­ing the legis­lative intent, a court should first consider the statutory lan­guage.  Where the statutory language is clear, it will be given effect without resort to other aids for construc­tion.  
People ex rel. Baker v. Cowlin
, 154 Ill. 2d 193, 197, 607 N.E.2d 1251, 1253 (1992).

In this case, the language could not be more clear.  It specifically states a defendant shall be sentenced as a Class X offender "after having twice been convicted of any Class 2 or great­er Class felonies 
in
 
Illinois
."  (Emphasis added.)  (730 ILCS 5/5-5-3(c)(8) (West 1996).  If the leg­is­la­ture had intended to include con­vic­tions out­side Illi­nois it could easily have said so.  In fact, the legisla­ture has dem­on­strated in other sections of the Code, as well as the Crim­i­nal Code, a poli­cy to in­clude con­vic­tions out­side Illi­nois when it was deemed ap­pro­priate.

For example, section 5-5-3(c)(7) of the Code prescribes a term of natu­ral life imprisonment for a defendant ad­judged to be a habitual criminal under article 33B of the Crim­i­nal Code.  730 ILCS 5/5-5-3(c)(7) (West 1996).  Sec­tion 33B-1(a) of the Crim­inal Code de­fines "ha­bit­u­al criminal" as follows:

"
Every person who has been twice con­victed in any state or federal court of an offense that contains the same elements as an offense now classi­fied in Illinois
 as a Class X felony, criminal sexual assault, aggravat­ed kidnapping or first degree mur­der, and is there­af­ter con­vict­ed of a Class X felony, criminal sexual assault or first degree mur­der, com­mit­ted after the 2 prior con­victions, shall be adjudged an habitual criminal."  (Emphasis added.)  720 ILCS 5/33B-1(a) (West 1996).

Another example of the legislature's wording is found in section 5-5-3(c)(2)(F) of the Code:

"A period of probation, a term of peri­odic impris­onment or conditional discharge shall not be imposed for the following of­fenses.  The court shall sen­tence the offend­er to not less than the mini­mum term of im­prison­ment set forth in this Code for the following offenses ***:

(F)A Class 2 or greater felony if the offender had been convicted of a Class 2 or great­er felony within 10 years of the date on which he commit­ted the offense for which he is being sentenced."  730 ILCS 5/5-5-3(c)(2)(F) (West 1996).

When called upon to determine whether the provisions of section 5-5-3(c)(2)(F) applied to prior convictions outside Illinois, this court specifically looked at the provision in section 5-5-3(c)(8), noting its use of the phrase "in Illinois."  The court then found the legislature's restriction of convictions to those in Illinois in one section of the Code did not imply the same restriction in other sections of the Code when it was si­lent and held the silence in section 5-5-3(c)(2)(F) allowed for the use of convictions in other states when they were for offenses that would be classified as Class 2 or greater in Illinois.  
People v. Daniels
, 194 Ill. App. 3d 648, 650-52, 551 N.E.2d 297, 299-300 (1990).  

The legislature purposely included the phrase "convict­ed in any state or federal court of an offense that contains the same elements as an offense now classified in Illinois" in sec­tion 33B-1(a) of the Criminal Code while specifically including only "in Illinois" in section 5-5-3(c)(8) of the Code.  720 ILCS 5/33B-1(a); 730 ILCS 5/5-5-3(c)(8) (West 1996).  Following the well-established principle of statutory construction, 
expressio unius est exclusio alterius
 (the expression of one thing implies the exclusion of the other) (see 
Condell Hospital v. Illinois Health Fa­cili­ties Planning Board
, 124 Ill. 2d 341, 366, 530 N.E.2d 217, 229 (1988)), the ex­pres­sion of "in Illi­nois" in sec­tion 5-5-3(c)(8) ex­cludes the impli­cation that out-of-state con­vic­tions are to be used to clas­sify a conviction as Class X for sentencing pur­poses.

The record does not indicate defendant had two prior Class 2 or greater felony convictions in Illinois.  We conclude he was inap­propriately sentenced as a Class X felon on his con­vic­tion for possession of a weapon by a person in the custody of DOC.  This was plain error.  

For the foregoing reasons, defendant's sentence of 10 years for aggravated battery is affirmed and his sentence of 30 years for possession of a weapon by a person in custody of DOC is reversed and the cause is remanded for resentencing.

Affirmed in part and reversed in part; cause remand­ed with directions.

GREEN, J., concurs.

COOK, J., specially concurs.

JUSTICE COOK, specially concurring:

The question has been asked in other contexts whether offens­es "arise from unrelated courses of conduct."  
Coleman
, 166 Ill. 2d at 257, 652 N.E.2d at 327.  Perhaps the test that finds the most offenses to be related is the "independent motivation test."  Under that test, a prisoner who stole a motor vehicle on prison grounds as part of his plan of escape could not be sen­tenced to consecutive terms for the escape charge and the theft charge, because the theft was not independently motivated or otherwise separable from the conduct that constituted the offense of es­cape.  
People v. Whittington
, 46 Ill. 2d 405, 409-10, 265 N.E.2d 679, 681-82 (1970); see also 730 ILCS 5/5-8-4(a) (West 1996) (court shall not impose consecutive sentences for offenses that were committed as part of a single course of conduct during which there was no substantial change in the nature of the crimi­nal objective).  At the other end of the spectrum is the "multi­ple acts test," which allows concurrent sentences whenever two of­fens­es are supported by more than one physical act, unless one offense is a lesser included offense of the other.  Under the multiple acts test a defendant can be sentenced to concurrent sentences where he enters a dwelling with the motivation to com­mit a rape.  
People v. King
, 66 Ill. 2d 551, 559-60, 363 N.E.2d 838, 841 (1977).  (Since 1988, however, consecu­tive sentences are mandatory where one of the offenses is aggra­vated criminal sexual assault.  See 730 ILCS 5/5-8-4(a) (West 1996).)  

It is not clear whether the majority adopts the inde­pendent motivation test, the multiple acts test, or some third test.  
Strickland
 may have employed the independent motivation test.  The majority states that possession of the weapon here was a separate offense from any battery committed with the weapon because (1) the elements of possession of a weapon do not require use of the weapon, and (2) defendant committed the offense of possession of a weapon before he committed the offense of battery with the weapon.  Slip op. at 8.  It may be that the majority has chosen to apply the "abstract elements test" once used to deter­mine whether one offense is a lesser included offense of another.  See 
People v. Hamilton
, 179 Ill. 2d 319, 327, 688 N.E.2d 1166, 1171 (1997).  

I conclude that the proper test to determine whether offenses arise from unrelated courses of conduct for purposes of extended-term sentencing is the least restrictive test, the mul­tiple acts test.  Here the court could have found that there were separate acts in that defendant possessed the weapon at a time separate from the time when he used the weapon to commit the battery.  Possession of a weapon and battery with a weapon are not lesser included offenses of each other, at least where they occur at different times.  Accord­ing­ly, the trial court proper­ly sen­tenced defen­dant to an extend­ed-term sentence for aggravat­ed battery.