(Nos. 68119, 68121 cons.—

RAUL CASTANEDA, Appellant, v. THE ILLINOIS HUMAN RIGHTS COMMISSION *et al.* (The Illinois Human Rights Commission, Appellant; Corroon and Black of Illinois, Appellee).

*Opinion filed November 22, 1989.*

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Rosalyn B. Kaplan, Assistant Attorney General, of Chicago, of counsel), for appellant Human Rights Commission.

Susan P. Malone, of Chicago, for appellant Raul Castaneda.

Gerald D. Skoning and Carl E. Johnson, of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for appellee.

JUSTICE STAMOS delivered the opinion of the court:

On December 30, 1982, defendant Corroon and Black of Illinois terminated the employment of plaintiff Raul Castaneda. On February 14, 1983, plaintiff filed a charge of discrimination with the Illinois Department of Human Rights (hereinafter the Department). The Department then filed a formal complaint against defendant, alleging violations of plaintiff's civil rights. After a full hearing, an administrative law judge found no discrimination and recommended that the complaint be dismissed. A three-member panel of the Illinois Human Rights Commission (hereinafter the Commission) adopted the judge's recommendations and dismissed the complaint with prejudice.

Plaintiff then sought review of the Commission's order in the appellate court. (175 Ill. App. 3d 1085, 1085-86.) The appellate court, *sua sponte*, dismissed the appeal because plaintiff had failed to exhaust his administrative remedies by not requesting a rehearing by the entire Commission. (175 Ill. App. 3d at 1086, 1088.) We granted plaintiff's and the Commission's petitions for leave to appeal (107 Ill. 2d R. 315).

The sole issue before this court is whether petitioners seeking judicial review of decisions by three-member panels of the Human Rights Commission must seek an *en bloc* rehearing before the Commission in order to exhaust their administrative remedies and to render such decisions final and reviewable. We conclude that they ordinarily must do so. Therefore, we affirm.

Parties aggrieved by the action of an administrative agency, such as the Human Rights Commission, ordinarily cannot seek review in the courts without first pursuing all administrative remedies available to them. (*Phillips v. Graham* (1981), 86 Ill. 2d 274, 289; *Walker v. State Board of Elections* (1976), 65 Ill. 2d 543, 551-52; *Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 358.) Requiring the exhaustion of remedies allows the administrative agency to fully develop and consider the facts of the cause before it; it allows the agency to utilize its expertise; and it allows the aggrieved party to ultimately succeed before the agency, making judicial review unnecessary. (*Allphin*, 60 Ill. 2d at 358; 4 K. Davis, Administrative Law Treatise 415 (2d ed. 1983).) The doctrine also helps protect agency processes from impairment by avoidable interruptions, allows the agency to correct its own errors, and conserves valuable judicial time by avoiding piecemeal appeals. 4 K. Davis, Administrative Law Treatise 415 (2d ed. 1983).

While this court generally requires strict compliance with this doctrine, we recognize several exceptions. An

aggrieved party may seek judicial review of an administrative decision without complying with the exhaustion of remedies doctrine where a statute, ordinance or rule is attacked as unconstitutional on its face (*County of Kane v. Carlson* (1986), 116 Ill. 2d 186, 199; *City of Chicago v. Illinois Commerce Comm'n* (1980), 79 Ill. 2d 213, 217; *Allphin*, 60 Ill. 2d at 358), where multiple administrative remedies exist and at least one is exhausted (*Allphin*, 60 Ill. 2d at 358; *One Way Liquors, Inc. v. Byrne* (1982), 105 Ill. App. 3d 856, 861), where the agency cannot provide an adequate remedy or where it is patently futile to seek relief before the agency (*Graham v. Illinois Racing Board* (1979), 76 Ill. 2d 566, 573; *Sanders v. City of Springfield* (1985), 130 Ill. App. 3d 490, 493), where no issues of fact are presented or agency expertise is not involved (*Allphin*, 60 Ill. 2d at 358; *McKenna v. Board of Trustees* (1980), 90 Ill. App. 3d 992, 998-99), where irreparable harm will result from further pursuit of administrative remedies (*Allphin*, 60 Ill. 2d 350; *Byrne*, 105 Ill. App. 3d at 861), or where the agency's jurisdiction is attacked because it is not authorized by statute (*Byrne*, 105 Ill. App. 3d at 861).

The appellate court never reached the merits of plaintiff's appeal. (175 Ill. App. 3d at 1086.) Therefore, we need only address the procedural aspects of the case at bar.

The procedure for redressing acts of employment discrimination by employers (see Ill. Rev. Stat. 1987, ch. 68, par. 2—102(A)) is contained in articles 7 and 8 of the Illinois Human Rights Act (hereinafter the Act) (Ill. Rev. Stat. 1987, ch. 68, pars. 7—101 through 8—113). Section 7—102(A) of the Act explains how aggrieved employees can file charges against their employers with the Illinois Department of Human Rights. The Department will then investigate the charge. If there is not substantial evidence of a civil rights violation, the Department will dis-

miss the charge, subject to review by the Commission. (Ill. Rev. Stat. 1987, ch. 68, par. 7—102(D)(2)(a).) If there is substantial evidence of a violation, the Department will attempt conciliation or settlement. (Ill. Rev. Stat. 1987, ch. 68, pars. 7—102(D)(2)(b), 7—102(E), 7—103.) Should these attempts fail, the Department will file a formal complaint against the employer with the Commission. Ill. Rev. Stat. 1987, ch. 68, par. 7—102(F).

After the complaint is filed, a hearing is set before a hearing officer of the Commission. (Ill. Rev. Stat. 1987, ch. 68, pars. 8—106(A), 8—106(B).) After the hearing, the officer will issue a written decision as outlined by the Commission's rules. (56 Ill. Adm. Code §5300.760 (1985).) This decision is not final, however, but is merely a recommendation to the Commission. 56 Ill. Adm. Code §5300.810 (1985); see Ill. Rev. Stat. 1987, ch. 68, par. 8—106(I).

The Commission's rules allow parties to object to the decision and recommendation of the hearing officer, and to argue such matters before the Commission. (56 Ill. Adm. Code §§5300.820 through 5300.860 (1985); see Ill. Rev. Stat. 1987, ch. 68, pars. 8—107(A) through (C).) Such hearings are conducted before a three-member panel of the Commission. (Ill. Rev. Stat. 1987, ch. 68, pars. 8—102(G), 8—107(E).) After the hearing, the panel will issue an order and decision. 56 Ill. Adm. Code §§5300.1010 through 5300.1040 (1985).

Plaintiff, in attempting to appeal the dismissal of his employment discrimination claim against defendant, successfully complied with all of the aforementioned procedures. It is at this point in the Act's procedural rules, however, that the controversy in the case at bar arises. Section 8—107(F) states:

"(F) Rehearing. (1) Within 30 days after service of the Commission's order, a party may file an application for rehearing before the full Commission. ***

(2) Applications for rehearing shall be viewed with disfavor, and may be granted, by vote of 6 Commission members, only upon a clear demonstration that a matter raises legal issues of significant impact or that three-member panel decisions are in conflict." (Ill. Rev. Stat. 1987, ch. 68, pars. 8—107(F)(1), (F)(2); 56 Ill. Adm. Code §5300.1050(c) (1985).)

Section 8—111(A) of the Act states:

"(A)(1) Judicial Review. Any complainant or respondent may apply for and obtain judicial review of a final order of the Commission entered under this Act by filing a petition for review in the Appellate Court within 35 days after entry of the order of the Commission, in accordance with Supreme Court Rule 335." Ill. Rev. Stat. 1987, ch. 68, par. 8—111(A)(1).

Plaintiff elected to forgo the rehearing process in section 8—107(F) and appealed directly to the appellate court under section 8—111(A)(1). (175 Ill. App. 3d at 1086.) In dismissing the appeal, the court held that " '[i]f there is an agency rule or statute which provides for a rehearing, then an agency decision is not appealable until the aggrieved party requests rehearing and his petition is denied.' " (175 Ill. App. 3d at 1087, quoting *Consolidation Coal Co. v. Department of Labor* (1985), 138 Ill. App. 3d 541, 544; and citing with approval *Condell Hospital v. Health Facilities Planning Board* (1987), 161 Ill. App. 3d 907, 929-30, *aff'd* (1988), 124 Ill. 2d 341; *Reiter v. Neilis* (1984), 125 Ill. App. 3d 774, 778; *Hoffman v. Department of Registration & Education* (1980), 87 Ill. App. 3d 920, 924; *Oliver v. Civil Service Comm'n* (1967), 80 Ill. App. 2d 329, 333; but declining to- follow *Jackson Park Yacht Club v. Department of Local Government Affairs* (1981), 93 Ill. App. 3d 542, 548-49 (administrative decision is a final order without an application for rehearing); *Danison v. Paley* (1976), 41 Ill. App. 3d 1033, 1036-37 (same).) The appellate court concluded that when plaintiff failed to seek a rehearing before the

entire Commission, he failed to exhaust his administrative remedies.

The appellate court also specifically addressed the applicability of two of the exceptions to the exhaustion of remedies doctrine in plaintiff's appeal: where the party has exhausted one of multiple remedies available before an agency, and where the pursuit of the remedies available would be futile. The court first disposed of the notion that a petition for rehearing of a matter decided by the Commission's panel is the commencement of a new proceeding before the agency. The court held that the right to request a rehearing is simply the right to a continuation of the original charge and complaint before the Commission, and therefore does not constitute one of multiple remedies available to a complainant. (175 Ill. App. 3d at 1087.) The court also held that plaintiff's petition did not fit into the futility exception because parties aggrieved by administrative rulings cannot avoid the exhaustion requirement merely because the relief they seek before an agency may be, or even probably will be, denied. 175 Ill. App. 3d at 1087-88, citing *Northwestern University v. City of Evanston* (1978), 74 Ill. 2d 80, 89.

Plaintiff and the Commission (hereinafter appellants) contend that an order and decision by a three-member panel of the Commission is a final order reviewable by the appellate court under Rule 335 and section 8—111 of the Act. Appellants first claim that an analysis of section 8—111(A)(1) of the Act reveals that plaintiff followed all the steps contemplated under the statutory scheme for exhausting his remedies before the Commission, and that the panel's decision is a final, appealable order. They note that neither section 8—111(A)(1) nor Supreme Court Rule 335 (107 Ill. 2d R. 335) defines the term "final order." However, Rule 335 incorporates section 3—101 of the Administrative Review Law. (107 Ill. 2d R. 335(h)(2); Ill. Rev. Stat. 1987, ch. 110, par. 3—101.) Sec-

tion 3—101 defines an "[a]dministrative decision" or "decision" as any order or determination of an administrative agency which affects the legal rights, duties, or privileges of parties and which terminates the proceedings before the agency. It further states:

"In all cases in which a statute or a rule of the administrative agency *requires or permits* an application for a rehearing or other method of administrative review to be filed within a specified time (as distinguished from a statute which permits the application for rehearing or administrative review to be filed at any time before judgment by the administrative agency against the applicant or within a specified time after the entry of such judgment), and an application for such rehearing or review is made, no administrative decision of such agency shall be final as to the party applying therefor until such hearing or review is had or denied." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 110, par. 3—101.

Appellants argue that a fair reading of these provisions requires this court to conclude that if a party who has received a decision from a three-member panel of the Commission makes no request for rehearing, that decision is final for purposes of judicial review. They urge that the mere availability of a rehearing procedure does not necessarily mean a party must use such a procedure. Appellants claim that the language of section 3—101 reflects this view by making a distinction between an agency which requires applications for rehearing before seeking judicial review, and those which merely permit it. They further argue that the language of section 8—111(A)(1) is discretionary, not mandatory (Ill. Rev. Stat. 1987, ch. 68, par. 8—111(A)(1) ("[a]ny complainant or respondent *may* apply for and obtain judicial review" (emphasis added))), and that if we agree with the appellate court that plaintiff failed to exhaust his remedies when he failed to request a rehearing, we will fail to recognize the plain meaning of the language of section 8—

111(A)(1). Our agreement with the appellate court, in appellants' estimation, will similarly make nugatory the distinction between required and permissive applications for rehearings contained in section 3—101 of the Administrative Review Law.

Two recent appellate court opinions, decided after the appellate court's judgment in the case at bar, support appellants' argument. In *Aero Testing & Balancing Systems, Inc. v. Human Rights Comm'n* (1989), 185 Ill. App. 3d 956, 959, and *City of Springfield v. Carter* (1989), 184 Ill. App. 3d 1, 5, the appellate court expressly disagreed with the appellate court ruling in this case. In particular, the *Carter* court presented an in-depth criticism of the appellate court's holding in the instant case. Although the appellate court in the case at bar relied on the authority of numerous cases in holding that plaintiff failed to exhaust his remedies, the *Carter* court distinguished these as *dicta* (184 Ill. App. 3d at 8-9 (criticizing *Castaneda* court's use of *Oliver, Hoffman* and *Reiter*)) or as factually distinguishable (184 Ill. App. 3d at 9-10 (criticizing use of *Consolidation Coal* and *Condell Hospital*)). The *Carter* court relied instead on the two cases which the appellate court in this case refused to follow (184 Ill. App. 3d at 8, citing *Danison v. Paley* (1976), 41 Ill. App. 3d 1033, 1036-37; accord *Jackson Park Yacht Club v. Department of Local Government Affairs* (1981), 93 Ill. App. 3d 542, 548-49), and interpreted the language of section 3—101 to mean that a decision of a three-member panel of the Commission is final by emphasizing the word "and" in section 3—101. The court noted that section 3—101 states that an administrative decision is not final if a rule of the agency permits an application for rehearing *and* such an application is filed. The court impliedly concluded that the logical construction of this provision was that an administrative decision is final unless two requirements are met: statutory au-

thority for a rehearing *plus* the filing of an application for a rehearing in that particular cause. Therefore, the only hindrance to the appeal of a panel decision, in the *Carter* court's estimation, was the aggrieved party's filing the request for a rehearing, not his failing to do so. (184 Ill. App. 3d at 8, citing *Danison*, 41 Ill. App. 3d at 1036-37.) Also, the *Carter* court, referring to the permissive nature of the language of section 8—107(F) (Ill. Rev. Stat. 1987, ch. 68, par. 8—107(F) ("Within 30 days *** a party *may* file an application for rehearing before the full Commission" (emphasis added))), refused to interpret the word "may" as meaning "must." 184 Ill. App. 3d at 10-11, citing *Levers v. Anderson* (1945), 326 U.S. 219, 221-224, 90 L. Ed. 26, 28-30, 66 S. Ct. 72, 73-74.

To further support this interpretation, appellants cite to this court's decision in *Condell Hospital v. Health Facilities Planning Board* (1988), 124 Ill. 2d 341. In *Condell Hospital*, we stated that an order issued by the defendant planning board would have been final, even in the absence of any request for reconsideration, and that the petition for rehearing filed in that case served only to delay the finality of the order. (*Condell Hospital*, 124 Ill. 2d at 365.) Appellants construe this statement to mean that the agency's order in *Condell Hospital* was final for purposes of judicial review as soon as it was entered.

Appellants also note that this court has described the exhaustion of remedies doctrine as "the counterpart of the procedural rule which, with certain exceptions, precludes appellate review prior to a final judgment in a trial court." (*Allphin*, 60 Ill. 2d at 358.) Appellants submit that this statement allows for a direct comparison between decisions of the Commission and final orders of circuit courts. A litigant who receives a final judgment in the circuit court may seek a rehearing of the matter. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1203.) If such a mo-

tion for rehearing is timely, this court's rules state that the finality of that judgment is delayed for purposes of appeal. (107 Ill. 2d R. 303(a)(2).) A litigant in the appellate court may also file a petition for rehearing and toll the time for filing a petition for leave to appeal to this court. (107 Ill. 2d R. 315(b).) In both of these instances, however, litigants need not file a petition for rehearing in order to seek further judicial review. Therefore, appellants conclude, the same rule should apply to decisions of the Commission.

Appellants also disagree with the appellate court's ruling that plaintiff's appeal does not fit into the futility exception to the exhaustion of remedies doctrine. Appellants point to the language of section 8—107(F)(2), which states that the Commission will view applications for rehearing "with disfavor." Section 8—107(F)(2) also clearly defines two narrow areas where the full Commission may grant rehearings after panel decisions: in cases where the decision raises legal issues of significant impact; or where different three-member panels have made conflicting decisions in similar cases. (Ill. Rev. Stat. 1987, ch. 68, pars. 8—107(F)(1), (F)(2); 56 Ill. Adm. Code §5300.1050(c) (1985).) Appellants claim that, because the case at bar does not fit into either of the areas where the Commission may allow rehearings, a petition for rehearing is a useless exercise. Appellants also base this argument on language this court used in *Keen v. Davis* (1967), 38 Ill. 2d 280:

> " 'It seems illogical to require a party to address the same argument to the same judge on the identical questions before proceeding to review by an appellate tribunal.' " (*Keen*, 38 Ill. 2d at 282, quoting *Larson v. Harris* (1966), 77 Ill. App. 2d 430, 434.)

Appellants, citing to the *Aero Testing* case which held that, under section 8—107(E)(1) of the Act, three-member panel decisions are final orders (*Aero Testing*, 185

Ill. App. 3d at 959), conclude that a required petition for rehearing before the Commission is equally illogical.

Finally, appellants make the claim that the appellate court's ruling in the case at bar overruled precedent established in the *Danison* and *Jackson Park Yacht Club* cases. They argue that where a court decision overrules precedent and the ruling results in hardship to the parties involved, this court has the power to rule that such a decision will only be applied prospectively. (*Elg v. Whittington* (1987), 119 Ill. 2d 344, 356; *Board of Commissioners v. County of Du Page* (1984), 103 Ill. 2d 422, 426.) Appellants argue that the prevailing view in the first appellate district, which was reflected in *Danison* and *Jackson Park Yacht Club*, was that no application for rehearing was required before seeking judicial review of an administrative decision. The contrary ruling of the appellate court in the case at bar deprived plaintiff of the opportunity to argue the merits of his appeal before the appellate court. Therefore, even if this court were to agree with the appellate court's holding in plaintiff's case, appellants argue that the principles of *Elg* and *Board of Commissioners* apply, and this court should hold that it was inequitable to permit this new rule to preclude plaintiff from receiving a review of the merits of his appeal.

We disagree with all of appellants' arguments. First, appellants have misinterpreted section 3—101 of the Administrative Review Law and section 8—107(F) of the Human Rights Act in their failure to use proper methods of statutory construction and their failure to consider both the basic policies which underlie the exhaustion of remedies doctrine and the reasons why the Illinois legislature created the Human Rights Commission. Second, appellants are incorrect in comparing the procedural aspects of the case at bar with the effect petitions for rehearing have on final orders in the Illinois court system.

Third, the futility exception to the exhaustion of remedies doctrine is inapplicable to the case at bar. Finally, we refuse to limit our holding to prospective application only.

First, appellants' reading of the statutes involved in this case is strained. While the legislature has instructed courts to liberally construe the general provisions, terms, phrases, and expressions of a statute in order that the true intent of the legislature is carried out (see Ill. Rev. Stat. 1987, ch. 1, par. 1002), this court has held that the intent of the legislature in enacting a statute must be determined by examining the *entire* statute and by construing each material part of the legislation together. (*People ex rel. Tuohy v. Barrington Consolidated High School District No. 224* (1947), 396 Ill. 129, 138.) A court should consider each part or section of a legislative act in connection with every other part or section, and not each part alone, in determining the purpose or intent of the legislature. (*People v. Handzik* (1951), 410 Ill. 295, 302; *Tuohy*, 396 Ill. at 138.) Besides examining the language of an act, a court should look to the evil that the legislature sought to remedy or the object it sought to attain in enacting the legislation. (*People v. Dednam* (1973), 55 Ill. 2d 565, 568; *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill. 2d 305, 317.) The interpretation of section 3—101 which appellants support violates these rules of statutory construction.

By focusing on section 3—101's distinction between discretionary and mandatory petitions for rehearing, appellants have extricated a single sentence from a much longer paragraph contained in the statute. Reading the entire paragraph where this sentence is located, we see that the main focus of section 3—101 is a distinction between administrative agency statutes or rules that provide for the filing of an application for rehearing within

a specified time (as in the case at bar) and those that allow an application for rehearing to be filed during an indefinite time period. The section goes on to focus on the latter, declaring that a petition for rehearing in such instances does not affect the finality of the original administrative decision and that such a petition constitutes a new proceeding before the agency. The section concludes by discussing limitations on the scope of review in instances where there are no time limitations on filing a petition for rehearing. Ill. Rev. Stat. 1987, ch. 110, par. 3—101.

Taken in the context of the entire paragraph, the sentence that appellants and the *Carter* court rely upon is not as clear as appellants would lead us to believe. As appellants point out, the sentence does unequivocally state that, in instances where the statute or agency rule requires or allows applications for rehearing to be filed within a specified time and such an application is made, the administrative decision is not final until the petition is dealt with. However, whereas section 3—101 clearly states that an administrative decision is final if agency rules allow an indefinite time within which to apply for rehearing, the sentence that appellants focus on makes no such statement. This leaves as ambiguous the matter of whether an administrative decision is a final order in instances where the statute or rule of the agency provides for applying for rehearing within a specified time, and such a petition is *not* filed.

In examining the Administrative Review Law as a whole, another section helps to clarify this ambiguity. Section 3—102, which defines the scope of administrative review, states that "[u]nless review is sought of an administrative decision within the time *and in the manner herein provided,* the parties to the proceeding *** shall be barred from obtaining judicial review of such administrative decision.*" (Emphasis added.) (Ill. Rev. Stat.

1987, ch. 110, par. 3—102.) Section 3—102 therefore prohibits judicial review of time-barred claims *and* those petitions for appeal which have not complied with the procedures described in the Administrative Review Law. This language indicates a legislative intent to require parties aggrieved by an administrative decision to strictly adhere to statutory methods in seeking judicial review. See *City of Chicago v. Illinois Commerce Comm'n*, 79 Ill. 2d at 216 (statutory method of review of agency decisions is exclusive).

Section 3—102 also states that if "an administrative decision has become final because of the failure to file any document in the nature of objections, protests, petition for hearing or application for administrative review within the time allowed *** such decision shall not be subject to judicial review" except for questioning jurisdiction. (Ill. Rev. Stat. 1987, ch. 110, par. 3—102.) This indicates that the legislature intended parties aggrieved by administrative agencies to exhaust all remedies before seeking an appeal, in that section 3—102 requires them either to use the procedural tools which the administrative statutes and rules provide them, or to forfeit their opportunity to obtain review in a court. Admittedly, an application for rehearing is not expressly included in the procedures enumerated in section 3—102. However, an application for rehearing is so close in nature to a "petition for hearing or application for administrative review" that distinguishing section 3—102's scope on such grounds is niggling. The underlying principle as related to the case at bar remains the same—aggrieved parties who fail to exercise all procedural remedies available to them in the allotted time relinquish any opportunity for judicial review.

We note that section 3—101 also demonstrates a legislative intent to codify the exhaustion of remedies doctrine. The second portion of section 3—101 emphasizes

how administrative decisions are final orders in instances where the statute or rule involved has no time specifications on filing an application for rehearing. The language of section 3—101 explicitly states that such an application constitutes a new proceeding before the agency involved. (Ill. Rev. Stat. 1987, ch. 110, par. 3—101.) This clearly evokes the multiplicity of remedies exception to the exhaustion of remedies doctrine.

Therefore, we find that the legislature intended to adopt the essence of the common law exhaustion of remedies doctrine in the Administrative Review Law, and that this was a major purpose underlying sections 3—101 and 3—102. We now look to the basic policies underlying the doctrine to determine if appellants' interpretation of these statutory provisions complies with those policies. We hold that it does not. The rehearing contemplated by section 8—107(F) occurs before the entire Commission, which allows the full nine-member Commission to fully develop and consider the facts of the cause more thoroughly than a three-member panel. For example, the full Commission would be able to pool its knowledge and experience, better allowing the agency to utilize its expertise in both considering whether a particular cause should be granted rehearing, and in conducting the rehearing itself, which would give the Commission the opportunity to correct its own errors. The aggrieved party also might ultimately succeed before the agency, making judicial review unnecessary. Finally, holding that an application for rehearing under section 8—107(F) is mandatory before seeking judicial review would ultimately result in the Commission's disposing of or discouraging fruitless appeals, thus freeing the appellate court from having to review many pointless appeals from the Commission. See *Allphin*, 60 Ill. 2d at 358; 4 K. Davis, Administrative Law Treatise 415 (2d ed. 1983) (describing the purposes of the exhaustion of remedies doctrine).

This last reason for holding that section 8—107(F) applications for rehearing are mandatory before seeking judicial review—keeping unnecessary Human Rights Act appeals out of the courts—also leads us to compare appellants' interpretation of section 3—101 with the policies behind the creation of the Human Rights Commission. The title of the Act, which precedes section 1—101, briefly outlines the Act's legislative purposes. One of these was the creation of the Commission, which the legislature intended "to adjudicate[ ] allegations of unlawful discrimination." (Pub. Act 81—1216, eff. July 1, 1980.) The Act itself states that "no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." (Ill. Rev. Stat. 1987, ch. 68, par. 8—111(C).) Further, where the Act authorizes exceptions to this prohibition on court jurisdiction over civil rights matters, such provisions have been narrowly construed. (See *People ex rel. Illinois Department of Human Rights v. Arlington Park Race Track Corp.* (1984), 122 Ill. App. 3d 517, 524-25 (reviewing court's issuance of permanent injunction void for lack of jurisdiction because under section 8—111 issue of injunctive relief was still before the Commission and therefore not reviewable, and because section 7—104(A) only allows court to hear petition for temporary relief); see also *Scott v. Sears, Roebuck & Co.* (N.D. Ill. 1985), 605 F. Supp. 1047, 1053 (Federal district court has no jurisdiction over discharged employee's claim under the Act).) Also, the legislature intended the Commission to be the exclusive vehicle for settling employment discrimination matters. (*Thakkar v. Wilson Enterprises, Inc.* (1983), 120 Ill. App. 3d 878, 883; *Sanders v. A.J. Canfield Co.* (N.D. Ill. 1986), 635 F. Supp. 85, 87; *Scott,* 605 F. Supp. at 1053.) All of this confirms the legislature's intent to vest the Commission with the authority and ability to decide all matters regarding civil rights vi-

olations. The case law and the statutory language positively indicate that the purpose for creating the Commission was to create an administrative agency with special expertise which would efficiently process complaints involving civil rights violations.

We hold that to allow judicial review of three-member panel decisions of the Commission without first requiring that an aggrieved party file an application for rehearing, and that the Commission deny that application, thwarts these purposes. The principles underlying the exhaustion of remedies doctrine require a party to seek an administrative remedy where one is still available and where seeking such a remedy will not lead to damage or unfairness to that party. As long as the full Commission hears the application for rehearing, there is a possibility that the panel decision will be overturned. The principles underlying creation of the Human Rights Commission require that the Commission, in its expertise, should be allowed every opportunity to dispose of complaints involving civil rights violations fairly and efficiently. Requiring the application for rehearing gives the Commission a second opportunity to fulfill that purpose. Allowing panel decisions to be appealable, however, skips over an available remedy and offends the legislative purposes in empowering the Commission.

This does not mean appellants' interpretation of section 3—101 is implausible. However, after close scrutiny using accepted methods of statutory construction, we have determined the ambiguities contained in section 3—101, combined with the policy considerations regarding the judicial review of administrative decisions contained in section 3—102, the exhaustion of remedies doctrine, and the Human Rights Act, mandate a conclusion that such an interpretation is contrary to the legislative intent underlying these statutes. The General Assembly could choose to clarify section 3—101's ambiguities in a

manner more favorable to appellants' position. Until then, however, we must hold that a section 8—107(F) application for rehearing is required before a party aggrieved by a decision of the Commission can obtain judicial review.

Appellants also incorrectly rely on this court's decision in *Condell Hospital* to support their interpretations of section 3—101. In *Condell Hospital*, we specifically distinguished that case from situations like the one in the case at bar. (*Condell Hospital*, 124 Ill. 2d at 367 (*Condell Hospital* was not a case where the party seeking judicial review was the same party entitled to the rehearing).) Also, *Condell Hospital* involved parties who were not required to seek any intervention within a specified period of time. This placed the *Condell Hospital* plaintiffs in the second category of cases discussed in section 3—101. (124 Ill. 2d at 367.) Therefore, *Condell Hospital* cannot serve as precedent for determining whether an administrative decision rendered by an agency under a statute which provides for a rehearing petition within a specified time is a final order subject to judicial review.

We also disagree with appellants' contentions regarding the language of section 8—107. We see nothing in section 8—107(E)(1) to indicate that panel decisions are final decisions reviewable by the appellate court. While the language of section 8—107(F)(1) is discretionary (Ill. Rev. Stat. 1987, ch. 68, par. 8—107(F)(1) ("a party *may* file [a petition] for rehearing before the full Commission" (emphasis added))), it is discretionary for *all* parties aggrieved by a panel decision. That is, we logically can interpret this language as meaning aggrieved parties "may" apply for a rehearing *if* they wish to pursue further review. The "discretion" here involves parties evaluating their cases and determining if they merit further appeal. If they choose to continue, they must apply for a

rehearing. Otherwise, they "may" decide to not continue the administrative review process.

As we stated in our conclusions regarding appellants' interpretation of section 3—101, we note that appellants' reading of section 8—107(F)(1) is not implausible. However, when we couple the language of section 8—107(F)(1) with the evil the legislature sought to remedy and the object it sought to attain through enacting the Administrative Review Law and the Human Rights Act, we must conclude that the legislature intended that parties aggrieved by a decision of a three-member panel of the Commission must file an application for rehearing before a court can review the panel's decision. In instances where a statute contains discretionary language, courts have interpreted the word "may" in statutory usage in both a discretionary and mandatory sense, depending on how the court perceived the legislative intent. A court is not to ascertain this intent only from the form of the statute, but also from the nature and object of the act and the consequences of construing it one way or the other. (*Miller v. Department of Public Aid* (1981), 94 Ill. App. 3d 11, 17; *Duna v. National Bank* (1961), 28 Ill. App. 2d 500, 503; 2A N. Singer, Sutherland on Statutes & Statutory Construction §§57.02 through 57.03 (Sands 4th ed. 1984).) In light of the matters already discussed regarding the nature and object of both the Human Rights Act and the exhaustion of remedies doctrine, we hold that "may" is to be interpreted in a mandatory sense in instances where parties desire judicial review of a panel decision. This is the only satisfactory method of complying with the legislative purpose of the Act.

Second, appellants' comparison of an application for rehearing before the Commission and a motion for rehearing before a trial or appellate court is not in point. We arguably made the statement that appellants rely upon (exhaustion of remedies is "the counterpart of the

procedural rule" regarding finality of judgments in trial courts) in the context of the policy reasons underlying the exhaustion of remedies doctrine, and not in any kind of direct comparison between appellate procedure in State courts and administrative review. (See *Allphin*, 60 Ill. 2d at 358.) However, even making such a comparison to show the similarities of the underlying policies between the exhaustion of remedies doctrine and analogous sections of the Code of Civil Procedure and supreme court rules is inappropriate in this instance because there is one glaring difference between the rehearing process before the Commission and the correlative process in the circuit or appellate court.

A rehearing before a circuit court judge or an appellate court panel will typically be before the very same judge or judges who rendered the decision from which the party seeks rehearing. A rehearing before the Commission, however, will be before the same three-member panel that rendered the original decision plus the remaining six members of the Commission. Thus, an application for rehearing before the Commission, and ultimately the rehearing itself, is more likely to result in the correction of any errors in the three-member panel's decision than the procedural "counterpart" under section 2—1203 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1203) and Supreme Court Rules 303 and 315, because six more judges who have not yet considered the aggrieved party's case are now examining it for the first time. Requiring an application for this type of *en bloc* review fits into the purposes that underlie the exhaustion of remedies doctrine. (*Allphin*, 60 Ill. 2d at 358; 4 K. Davis, Administrative Law Treatise 415 (2d ed. 1983) (these purposes include allowing agency to utilize its expertise, allowing party to ultimately succeed before agency, and allowing agency to correct its own errors).) While these purposes are similar to those that

support allowing rehearings before circuit court judges and appellate court panels, the qualitative difference is in who decides whether to conduct the rehearing and before whom the rehearing is conducted. This difference makes appellants' reliance on the characterization of the exhaustion of remedies as a procedural "counterpart" to the Code of Civil Procedure and the supreme court rules inappropriate.

Third, we disagree with appellants' contention that an application for rehearing before the full Commission is futile because plaintiff's case does not fit into one of the narrow categories where the Commission will allow a rehearing. The language of section 8–107(F)(2) stating that the Commission will view applications for rehearing with disfavor is a statement of policy. Even if it disfavors rehearing petitions, basic principles of due process require the Commission to hear and decide all applications for rehearing. This language, combined with the statements following it defining when the Commission will grant rehearings, simply indicates that obtaining a rehearing before the full Commission will be difficult. This section is designed to assist aggrieved parties in determining if further administrative appeal beyond the panel decision would be promising. Certainly, any issue that is not in conflict among the Commission's panels will not foreclose Commission members from voting to rehear it if the situation merits a rehearing, particularly because "legal issues of significant impact" can be defined quite broadly. In fact, the substantive issues of plaintiff's appeal—disputes involving what are the appropriate discovery procedures under the Act and the sanctions available for noncompliance with those procedures—are arguably of significant impact. Plaintiff could have, in good faith, applied for a rehearing and complied with the policy outlines of the statute. Therefore, plaintiff's application for a rehearing would not have been fu-

tile. The General Assembly, of course, is free to change the procedure for obtaining judicial review of a Commission decision. However, after considering the legislative purpose behind the Human Rights Act and the policies that underlie the exhaustion of remedies doctrine, and without any further legislative guidance other than the language of section 8—107(F)(2), we hold that requiring aggrieved parties to apply for rehearing before seeking judicial review of panel decisions is not violative of the policy set forth in section 8—107(F)(2).

Appellants also argue that the "disfavor" language of section 8—107(F)(2) indicates that the Commission is unlikely to grant applications for rehearing, making such applications fit into the futility exception of the exhaustion of remedies doctrine. However, the fact that there are clear indications that the agency may or will rule adversely is generally inadequate to terminate the administrative process or to avoid the exhaustion requirement. (See *Northwestern University*, 74 Ill. 2d at 89; *Ellison v. Kane County Sheriff's Office Merit Comm'n* (1982), 108 Ill. App. 3d 1065, 1067; *Byrne*, 105 Ill. App. 3d at 862.) Particularly because rehearings are conducted before the full Commission, and not just before the same three-member panel that rendered the original decision, the opportunity for the Commission to detect errors during the rehearing application process does exist, even if the Commission has a stated policy that disfavors granting rehearings. We therefore hold that the futility exception to the exhaustion of remedies doctrine is inapplicable to the case at bar.

Finally, we deny appellants' request that, should this court affirm the judgment of the appellate court in this case, we give our decision only prospective application. It is within the inherent power of the highest court of the State to give a decision prospective or retroactive application; and we may decide to apply our decisions

prospectively when retroactive application would be inequitable. (*Board of Commissioners v. County of Du Page*, 103 Ill. 2d at 426.) In determining whether to apply a decision in a civil case only prospectively, this court has relied on three factors: first, the nonretroactive decision must establish a new rule of law by either overruling past precedent on which litigants have relied or by deciding an issue of first impression where the resolution was not clearly foreseen; second, we balance both sides of the issue in question by looking to the rule's prior history, purpose, and effect and then determine if retroactive operation will advance or hamper its operation; and third, we equitably consider whether there is any injustice or hardship in holding the decision retroactive. *Board of Commissioners*, 103 Ill. 2d at 426-27, citing *Chevron Oil Co. v. Huson* (1971), 404 U.S. 97, 106-07, 30 L. Ed. 2d 296, 306, 92 S. Ct. 349, 355.

Appellants would have us apply our decision in this case prospectively based upon the first *Chevron Oil* factor. However, no new rule of law proceeds from this case, and to require plaintiff to apply for a rehearing before seeking judicial review neither overrules precedent nor decides an issue of first impression. The doctrine of exhaustion of remedies has been a "long settled rule of judicial administration." (*Myers v. Bethlehem Shipbuilding Corp.* (1938), 303 U.S. 41, 50-51, 82 L. Ed. 638, 644, 58 S. Ct. 459, 463.) The long list of cases cited by the appellate court in the case at bar (see 175 Ill. App. 3d at 1087), which are contrary to appellants' position, reveals that the *Danison, Jackson Park Yacht Club, Aero Testing,* and *Carter* cases are not the only precedent on which litigants can rely in this area. Even though many of the cases that the appellate court relied upon are factually distinguishable or mention the exhaustion of remedies doctrine in *dicta*, as the *Carter* court noted, the plethora of case law that supports defendant's view in

this case indicates that there was a genuine conflict between various appellate court opinions in this area, and the appellate court in the case at bar simply chose to follow one set of decisions over the other. The appellate court, therefore, was not overturning established precedent.

Examining the other two *Chevron Oil* factors also leads us to deny appellants' request for prospective application of this decision. We have already noted that historically we have strictly required adherence to the doctrine of exhaustion of remedies, and have discussed at length the purposes and effects of the doctrine; and we have explained that allowing Commission panel decisions to be final, appealable orders will thwart these purposes and effects. Also, the inequities that appellants claim plaintiff suffered are minimal. Plaintiff had two opportunities to argue the merits of his case before an administrative law judge and a three-member panel of the Commission under a statute specifically designed to be the exclusive remedy for the type of wrong plaintiff allegedly suffered. (See *Thakkar*, 120 Ill. App. 3d at 883.) Thus, appellants' claim that plaintiff has not had a fair opportunity to argue the merits of his claim is absurd.

Therefore, after considering appellants' claims under the *Chevron Oil* factors for determining whether to limit a judgment to prospective application, we hold that the judgment in this case shall be applied retroactively.

To the extent the appellate court cases cited herein are inconsistent with this opinion, they are overruled.

The judgment of the appellate court is affirmed.

*Affirmed.*