# Illinois Official Reports

## Appellate Court

---

**International Union of Operating Engineers, Local 965 v. Office of the Comptroller,**
**2014 IL App (4th) 131079**

---

| | |
|---|---|
| Appellate Court Caption | INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 965, Plaintiff-Appellant, v. OFFICE OF THE COMPTROLLER, State of Illinois, Defendant-Appellee. |
| District & No. | Fourth District<br>Docket Nos. 4-13-1079, 4-13-1082 cons. |
| Rule 23 Order filed | November 3, 2014 |
| Rule 23 Order withdrawn | December 12, 2014 |
| Opinion filed | December 12, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where plaintiff union entered into two collective bargaining agreements with the Illinois Office of the Comptroller for two different bargaining units, each including employees with the job classification of "Public Service Administrator" (PSA), and less than a year after the agreements became effective, the Public Labor Relations Act was amended to exclude any employee of the Comptroller in the position of PSA from the definition of "public employee" or "employee," the Comptroller excluded PSAs from the agreements as of the amendment's date but the union argued that the amendment should not be applied until after the agreements expired on June 30, 2015, and when the Comptroller filed a unit-clarification petition with the Illinois Labor Relations Board, the union responded by filing petitions in the circuit court seeking declaratory judgments compelling the processing of grievances and arbitration, and the trial court properly dismissed the union's action on the grounds that it failed to exhaust its administrative remedies, since the Comptroller's unit-clarification proceedings were proper under the circumstances, and the Comptroller's action was filed first and the dismissal of the union's action in the trial court obviously did not deprive the union of judicial review of the Board's decision in the unit-clarification proceedings. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, Nos. 13-MR-397, 13-MR-398; the Hon. John W. Belz, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael W. O'Hara (argued), of Cavanagh & O'Hara, of Springfield, for appellant. |
| | Lisa Madigan, Attorney General, of Chicago (Carolyn E. Shapiro, Solicitor General, and Paul Racette (argued), Assistant Attorney General, of counsel), for appellee. |
| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion. Justices Holder White and Steigmann concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff, International Union of Operating Engineers, Local 965 (Union), appeals the circuit court's dismissal of two actions it filed seeking declaratory relief and naming the Illinois Office of the Comptroller (Comptroller) as defendant. The court dismissed the Union's actions, finding it failed to exhaust administrative remedies before the Illinois Labor Relations Board (Board). We affirm.

¶ 2                                    I. BACKGROUND

¶ 3    On April 4, 2013, the Union and the Comptroller entered into two collective-bargaining agreements (CBAs) which were each applicable to separate bargaining units. Each bargaining unit included Comptroller employees who held the job-classification title of "Public Service Administrator" (PSA). Both CBAs were effective retroactively from July 1, 2012, until June 30, 2015.

¶ 4    On April 5, 2013, section 3(n) of the Illinois Public Labor Relations Act (Act) (5 ILCS 315/3(n) (West 2012)), which defines a "public employee" or "employee" for purposes of the Act, was amended (see Pub. Act 97-1172, § 5 (eff. Apr. 5, 2013)). Relevant to this appeal, the amendment added language to section 3(n) which excluded any "person who is a State employee under the jurisdiction of the *** Comptroller who holds the position of [PSA]" from the definition of "public employee" or "employee." 5 ILCS 315/3(n) (West 2012). The Comptroller interpreted the amendatory language of section 3(n) to mean that PSAs it employed were excluded from collective bargaining as of April 5, 2013, and, therefore, also excluded as of that date from the two bargaining units governed by the CBAs entered into between the parties on April 4, 2013.

¶ 5        Conversely, the Union took the position that the statutory amendment was not applicable to the parties' existing contracts and would not affect any bargaining-unit employees until after June 30, 2015, the expiration of the parties' CBAs. On April 26, 2013, it served two grievances on the Comptroller (one for each bargaining unit), alleging the Comptroller's action "to unilaterally remove the [PSA] classification from both of the bargaining units" at issue violated the parties' CBAs. On May 9, 2013, the Comptroller responded to the Union, stating it refused to recognize the Union's grievances as valid. It asserted as follows:

> "[A]s of April 5, 2013, [PSAs] in the employ of the [Comptroller] no longer enjoyed the rights connected to collective and concerted activities, including the right to grieve.
>
> Because [PSAs] are no longer members of the bargaining unit, they are no longer represented by [the Union]. Therefore, [the Union's legal counsel does] not have the capability *** to file a grievance with regard to these nonmembers of the bargaining unit."

On May 13, 2013, the Comptroller filed a unit-clarification petition with the Board, seeking to have it clarify that PSAs under the jurisdiction of the Comptroller were excluded from collective bargaining and the bargaining units at issue as of the effective date of the amendment, April 5, 2013.

¶ 6        On May 29, 2013, the Union filed petitions in the circuit court (case Nos. 13-MR-397 and 13-MR-398) "to compel processing of grievance and to compel arbitration." It argued the amendment to section 3(n) of the Act was not applicable to the parties' CBAs, which predated the amendment. The Union maintained its grievances should have been processed pursuant to the grievance/arbitration procedure set forth in the CBAs and the Comptroller's refusal to follow such a procedure constituted both a breach of the parties' agreements and an unfair labor practice. It requested the court issue an order compelling the Comptroller to process its grievances and submit to the arbitration process set forth in the CBAs.

¶ 7        On July 8, 2013, the Comptroller filed motions to dismiss the Union's petitions, citing section 2-615 of the Code of Civil Procedure (Civil Code) (735 ILCS 5/2-615 (West 2012)). It noted it had filed a unit-clarification petition with the Board, which it asserted was the preferred method for addressing the parties' conflict. Additionally, the Comptroller asserted the parties' dispute was "not one within the authority of an arbitrat[or] to resolve because *** the dispute is one of statutory interpretation, not contract interpretation."

¶ 8        On September 30, 2013, the circuit court conducted a hearing on the Comptroller's motions to dismiss. The record does not contain a transcript of that hearing; however, the court's docket entry states: "Arguments heard. Motion to dismiss is allowed with leave to refile within 7 days. Cause set for hearing on merits ***."

¶ 9        The same day its original petitions were dismissed, the Union filed petitions in both cases "for declaratory judgment, to compel processing of grievance and to compel arbitration." It raised similar contentions as in its initial filings but additionally requested that, in conjunction with its request to compel the processing of its grievances and arbitration, the circuit court issue a declaratory judgment "as to the effective and applicability date of the statutory amendment at issue." The Union sought to have the court declare "that because the Illinois Legislature failed to articulate a temporal applicability date for exclusion–from the definition of 'public employee' under the [Act]–of the [PSA] position *** that said statutory amendment is only prospectively applicable and does not affect the [CBAs] in effect at the time of the enactment of the Public Act [which amended the statute]."

¶ 10 On October 21, 2013, the Comptroller filed briefs in each case "pursuant to court order of September 30, 2013," addressing the Union's September 30 filings. It argued the statutory amendment at issue was "effective to remove positions from the bargaining unit[s] on the date it became law" and asserted the circuit court should dismiss the Union's petitions for failure to exhaust administrative remedies or, in the alternative, stay the actions pursuant to the doctrine of primary jurisdiction.

¶ 11 On October 24, 2013, the Union filed a response to the Comptroller's brief. With respect to the Comptroller's exhaustion argument, the Union maintained its actions presented a purely legal issue that was appropriately before the circuit court. Additionally, it argued the Board lacked jurisdiction to consider the issue through unit-clarification procedures.

¶ 12 On October 25, 2013, the circuit court conducted a hearing, the purpose of which is unclear. There were no pending motions to dismiss directed toward the Union's amended petitions. The record does not contain a transcript of that hearing but the court's docket entry shows arguments were heard and the matter taken under advisement. Although the court's docket entry for September 30, 2013, indicated the case was "set for hearing on merits," it appears that the parties and the court proceeded on October 25, 2013, as if it was a dismissal hearing. On November 7, 2013, the court entered its order dismissing the Union's petitions "without prejudice to the right of the parties to seek administrative review after exhaustion of administrative remedies," which the court determined the Union had not done.

¶ 13 On November 21, 2013, the Union filed "motion[s] for rehearing, reconsideration and modification/vacation of order" in each case. On December 6, 2013, the circuit court denied the Union's motions. Its docket entry provides as follows:

> "The Court stands by its previous rulings in this matter. The court finds the *** Board has jurisdiction over this matter. The court has previously found that [the Union] has not exhausted its administrative remedies and must proceed with this action in front of the *** Board."

¶ 14 The Union filed notices of appeal in both cases. Its appeals were consolidated on review.

¶ 15 In its brief, the Comptroller notes that, while proceedings were pending in the circuit court, proceedings before the Board on the Comptroller's unit-clarification petition continued. Although not part of the underlying record, we may take judicial notice of the Board's decision. *City of Chicago v. Illinois Labor Relations Board, Local Panel*, 392 Ill. App. 3d 1080, 1083, 913 N.E.2d 12, 15 (2009) (stating a reviewing court could take judicial notice of a Board order although the order was not contained in the appellate record).

¶ 16 On April 8, 2014, the Board issued its decision and order in the matter. *Illinois Office of the Comptroller*, 30 PERI ¶ 282 (ILRB State Panel 2014). Ultimately, it agreed with the Comptroller's position, finding the unit-clarification petition was "appropriate" and "PSAs should be excluded from existing bargaining units, *** as they are no longer public employees under the Act." *Illinois Office of the Comptroller*, 30 PERI ¶ 282 (ILRB State Panel 2014). The Union appealed the Board's decision and its appeal is currently pending before this court (case No. 4-14-0352).

¶ 17                                                    II. ANALYSIS

¶ 18 On appeal, the Union argues the circuit court erred by refusing to rule on its petitions for declaratory judgment. It maintains it was not required to exhaust administrative remedies prior

to seeking relief in the circuit court and contends the parties' conflict involved a purely legal issue that did not require any administrative expertise or insight. The Union also argues it was exempt from exhaustion requirements because the Board lacked administrative jurisdiction over the parties' dispute.

¶ 19    A proceeding for declaratory judgment "may be employed alone or in combination with other remedies to determine questions as to the construction or interpretation of statutes and is an appropriate method for determining controversies relating to such construction." *Office of the Lake County State's Attorney v. Illinois Human Rights Comm'n*, 200 Ill. App. 3d 151, 155, 558 N.E.2d 668, 671 (1990). Pursuant to section 2-701 of the Civil Code (commonly known as the Declaratory Judgment Act) (735 ILCS 5/2-701(a) (West 2012)), a "court *may*, in cases of actual controversy, make binding declarations of rights." (Emphasis added.) "[T]he appropriateness of the [Declaratory Judgment] Act as a vehicle for relief is a question for the trial court's discretion, and *** review is deferential." *In re Marriage of Rife*, 376 Ill. App. 3d 1050, 1059, 878 N.E.2d 775, 784 (2007).

¶ 20    "The exhaustion doctrine applies where a claim is cognizable in the first instance by an administrative agency." *Beahringer v. Page*, 204 Ill. 2d 363, 375, 789 N.E.2d 1216, 1224 (2003). When the legislature vests an agency with the authority to administer a statute, declaratory relief is unavailable and "judicial interference must be withheld until the administrative process has run its course." *Beahringer*, 204 Ill. 2d at 375, 789 N.E.2d at 1224. "The reasons for the exhaustion requirement are to allow the administrative agency to fully develop and consider the facts of the case before it, to allow the agency to utilize its expertise, and to allow the aggrieved party to obtain relief from the agency, thus making judicial review unnecessary." *Canel v. Topinka*, 212 Ill. 2d 311, 320-21, 818 N.E.2d 311, 319 (2004).

¶ 21    Although strict compliance with the exhaustion doctrine is generally required, the supreme court has recognized six exceptions to the doctrine. *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 308, 547 N.E.2d 437, 439 (1989). The court has held that a party may be excused from complying with the exhaustion doctrine where (1) "a statute, ordinance or rule is attacked as unconstitutional on its face"; (2) "multiple administrative remedies exist and at least one is exhausted"; (3) "the agency cannot provide an adequate remedy or *** it is patently futile to seek relief before the agency"; (4) "*no issues of fact are presented or agency expertise is not involved*"; (5) "irreparable harm will result from further pursuit of administrative remedies"; or (6) "*the agency's jurisdiction is attacked because it is not authorized by statute*." (Emphases added.) *Castaneda*, 132 Ill. 2d at 309, 547 N.E.2d at 439.

¶ 22    In *Coles-Moultrie Electric Cooperative v. City of Charleston*, 8 Ill. App. 3d 441, 444, 289 N.E.2d 491, 493 (1972), this court affirmed the trial court's dismissal of a declaratory judgment action where administrative proceedings were also pending. We noted the Declaratory Judgment Act contains permissive language which gives the trial court "discretion in deciding whether to enter a declaratory judgment in the particular case." *Coles-Moultrie*, 8 Ill. App. 3d at 444, 289 N.E.2d at 493. Further, we held that " '[o]ne way of exercising this discretion is to dismiss the complaint if it appears from the face of the complaint that there has accrued another existing and well-recognized form of action'. [Citations.]" *Coles-Moultrie*, 8 Ill. App. 3d at 444, 289 N.E.2d at 493. Ultimately, we found the trial court's refusal to grant declaratory relief was appropriate, noting "[t]he issues sought to be determined in the action for declaratory judgment *** were pending before the Illinois Commerce Commission" and finding no abuse of the trial court's discretion. *Coles-Moultrie*, 8 Ill. App. 3d at 444, 289

- 5 -

N.E.2d at 493. In the instant case, we also find the trial court committed no abuse of its discretion by dismissing the Union's petitions for declaratory relief.

¶ 23    Under the Act, either "[a] labor organization or an employer may file a unit[-]clarification petition seeking to clarify an existing bargaining unit." 5 ILCS 315/9(a-6) (West 2012). The Board's rules then provide as follows with respect to unit-clarification procedures:

"An exclusive representative or an employer may file a unit[-]clarification petition to clarify or amend an existing bargaining unit when:

1) substantial changes occur in the duties and functions of an existing title, raising an issue as to the title's unit placement;

2) an existing job title that is logically encompassed within the existing unit was inadvertently excluded by the parties at the time the unit was established; and

3) a significant change takes place in statutory or case law that affects the bargaining rights of employees." (Emphasis added.) 80 Ill. Adm. Code 1210.170(a) (2003).

¶ 24    The purpose of unit-clarification procedures "is to provide an official determination of a bargaining unit's composition." *State of Illinois v. State of Illinois*, 364 Ill. App. 3d 1028, 1032, 848 N.E.2d 118, 121 (2006). Further, "the unit-clarification process is appropriate 'to remove statutorily excluded employees from a bargaining unit.' " *State of Illinois*, 364 Ill. App. 3d at 1034, 848 N.E.2d at 123 (quoting *SEDOL Teachers Union v. Illinois Educational Labor Relations Board*, 276 Ill. App. 3d 872, 879, 658 N.E.2d 1364, 1368 (1995)).

¶ 25    The Comptroller maintains the unit-clarification procedure provided for in the Act was the proper method for resolving the parties' underlying dispute, *i.e.*, whether the amendment to section 3(n) of the Act excluded Comptroller PSAs from existing CBAs as of the effective date of the amendment. Specifically, it argues the amendment at issue represented a "significant change *** in statutory or case law that affects the bargaining rights of employees" as set forth in the Illinois Administrative Code (80 Ill. Adm. Code 1210.170(a)(3) (2003)) and, therefore, provided a sufficient basis for the Comptroller's unit-clarification petition.

¶ 26    The Union argues, however, that unit-clarification procedures are not appropriate in this instance because the amendment to section 3(n) is not a significant change to statutory law that *currently* "affects" the rights of bargaining-unit employees and will not affect their rights until after the expiration of the parties' CBAs. Therefore, it contends the parties' dispute did not fall within any permissible grounds for seeking unit clarification and the Board lacked jurisdiction over the underlying dispute. Further, the Union maintains that, because it has raised a challenge to the Board's administrative jurisdiction, it is exempt from the general requirement that it must exhaust administrative remedies.

¶ 27    First, we disagree with the Union's position that unit-clarification procedures were not proper under the circumstances. In particular, we find that the amendment to section 3(n) constituted "a significant change *** in statutory *** law that affects the bargaining rights of employees." 80 Ill. Adm. Code 1210.170(a)(3) (2003). The Union does not dispute that the amendment at issue constituted a significant change in statutory law. Further, the added statutory language clearly has an effect on employee-bargaining rights as it excludes certain job classifications from the Act's definition of "public employee" or "employee." Contrary to the Union's position, the fact that the amendment may not *immediately affect* the bargaining rights of employees is not determinative of the appropriateness of a unit-clarification

proceeding because neither the Act nor the Board's rules set forth such a requirement. The Union is simply reading an extra requirement into the Board's rules that does not exist.

¶ 28 Second, we also disagree with the Union's position that its argument with respect to the appropriateness of unit-clarification proceedings constituted an attack on the Board's jurisdiction which fell within an exception to the exhaustion doctrine. To support its position, the Union cites *Landfill, Inc. v. Pollution Control Board*, 74 Ill. 2d 541, 551, 387 N.E.2d 258, 261 (1978), wherein the supreme court held that "where an administrative body's assertion of jurisdiction is attacked *on its face and in its entirety* on the ground that it is not authorized by statute, exhaustion of administrative remedies and compliance with the Administrative Review Act is not required." (Emphasis added.)

¶ 29 Here, the Union does not challenge the Board's administrative authority "on its face" as unauthorized. A successful facial challenge would require that there be no set of circumstances under which the challenged assertion of administrative authority would be valid. See *Hope Clinic for Women, Ltd. v. Flores*, 2013 IL 112673, ¶ 33, 991 N.E.2d 745 (stating "[a] facial challenge to a legislative act is the most difficult challenge to mount successfully because the challenger must establish that under no circumstances would the challenged act be valid"). In this instance, the Union argues administrative action, *i.e.*, a unit-clarification proceeding, would be inappropriate based upon the specific circumstances presented in this case. It does not challenge such administrative action in every circumstance. Thus, we find the jurisdictional challenge raised by the Union does not fall within the specific exception to the exhaustion doctrine set forth in *Landfill*.

¶ 30 On appeal, the Union also argues it was exempt from exhaustion requirements because the underlying issue involves only matters of law and requires no agency expertise. See *Castaneda*, 132 Ill. 2d at 309, 547 N.E.2d at 439 (providing an exception to the exhaustion doctrine applies when "no issues of fact are presented or agency expertise is not involved"). Although we agree that the underlying issue concerns a matter of statutory construction and does not necessarily involve the Board's expertise, we nevertheless find no abuse of discretion in the court's dismissal of the Union's declaratory judgment actions.

¶ 31 The record shows the Comptroller's unit-clarification petition was pending prior to the Union's filing of its actions in the circuit court. As discussed, we find unit-clarification proceedings were appropriate to address the underlying issue. Pursuant to this court's holding in *Coles-Moultrie*, we find the trial court had discretion to determine whether a request for a declaratory judgment was the appropriate vehicle for the Union's requested relief. Here, we find no abuse of discretion by the trial court in dismissing the Union's actions. Additionally, we note the court's dismissal does not deprive the Union of judicial review as judicial review is possible upon the conclusion of administrative proceedings. (As noted by the Comptroller on appeal, unit-clarification proceedings before the Board have concluded and review of the Board's final decision is currently pending before this court.)

¶ 32                                                    III. CONCLUSION
¶ 33 For the reasons stated, we affirm the circuit court's judgment.

¶ 34 Affirmed.